## STRIPLING *vs.* THE STATE OF GEORGIA.

The name of one Jones was on the panel of jurors put upon the prisoner. One Jobson served in his place, and when the name of the former was called, the latter answered, and served on the jury trying the defendant. After conviction, a new trial was moved for, and the defendant and his counsel made affidavits that they did not discover the substitution until after the trial; that the original and substituted jurors were both unknown to them; but, from inquiry as to both, counsel stated that he was satisfied that Jones would have been acceptable to them, while Jobson would not:

*Held,* that a new trial should have been granted.

February 8, 1887.

Jury and Jurors. Practice in Superior Court. Before Judge HARRIS. City Court of Macon. March Term, 1886.

Reported in the decision.

M. G. BAYNE, for plaintiff in error.

J. L. HARDEMAN, solicitor-general, for the state.

HALL, Justice.

Stripling was tried and found guilty of furnishing a minor with intoxicating liquor. He moved for a new trial on various grounds, the third of which only will be considered.

It seems that a man by the name of Jones was drawn, summoned and returned to serve as a juror for that term

of the court. Jones's name, at the organization of the jury, was placed upon the panel, and whenever it was called, a person by the name of Jobson answered. How Jobson came to be substituted for Jones does not appear. It is somewhat remarkable that the substitution was not discovered and corrected at an earlier period in the term. Jobson, who answered for Jones, was thus selected as one of the jurors that tried this case. The defendant and his counsel made affidavit that they did not discover the mistake until after the trial was over; that they had no personal acquaintance with either Jones or Jobson, and did not know either of them by sight, though they knew both by reputation. They further stated that from what they had learned about Jones, he was an acceptable juror, but from their knowledge of Jobson, acquired in a similar manner, he would have been a very unacceptable one. The allegation, in short, is that the defendant was tried by only eleven jurors of his own selection, and he asked, therefore, that a new trial be granted him upon this and other grounds; which, as before stated, the court refused.

. This refusal we are satisfied was error. The law attaches importance to a man's name—so much importance, indeed, that he cannot change it, except by an application to the superior court of the county of his residence, and not even then, if the change is not desired for a proper purpose, as is laid down in §1787 (a) and (b) of the Code. There have been cases, both in England and this country, closely approaching this case; but all distinguishable from it in the main fact that the substitution in this case was not discovered, because neither the original juror, nor the party who had been substituted for him, was known to the defendant or his counsel until after the verdict was rendered. The case that approaches it most nearly is that of *Anderson vs. Green*, 46 *Ga.* 361 (6 h. n.), where this court in these words laid down a rule that seems to cover the point: "That there was a substitute for the juror selected by the parties, who answered to the name of his principal, is no

ground for a new trial, it not appearing that both substitute and principal were unknown to defendant and his own counsel." There are a number of other cases which resulted variously, all of which are reviewed by Chief Justice Gibbs in the case of Dovey *vs.* Hobson, 6 Taunton's Rep. 461, in which he goes back to the time of Willes' Reports, and shows where new trials were granted or refused. A new trial was granted in this last named case; but there the mistake as to the substitution was discovered and excepted to before the trial had ended, and the exception on this point was overruled. This, as well as the cases cited, seems to admit that if the variance between the panel as it originally stood, and as it was in fact made up, could have appeared on the face of the record, it would have been a good ground to arrest the judgment; but it not thus appearing, and a new trial being within the discretion of the court on a question like this, and it not being shown that any injustice was done the party, the court refused to interfere. To the length, however, of the case reported in Willes, Chief Justice Gibbs in this judgment did not go, and under the peculiar facts, the court, whose organ he was, probably would not have gone.

Now, it seems to us, there are various exceptions *propter defectum* that might have been made to Jobson if his name had appeared upon this panel, to which Jones was not amenable, and of which, if this defendant had known him, he might have availed himself; for instance, it might have been shown that he was a minor, a non resident of the county, that he was of kin to some of the parties implicated in this transaction; in short, he might have been objected to on any of the various grounds laid down by this court in *Simmons's* case, 73 *Ga.* 609–11. Besides this, he might have shown him incompetent, *propter affectum*, by putting him on his *voir dire*, or by the testimony of other witnesses. The practice of allowing such things to go on in a court of justice is, to say the least, unseemly. Somebody other than the defendant or his counsel was

evidently to blame. Whether it was called to the attention of the judge or not, prior to this motion for new trial, we do not know; nor is it material, considering its effect upon the rights of the defendant, that it should be known to whom the blame is attributable. The sheriff and the clerk should have known it, and they should have been dealt with for a failure to do their duty in this respect, if it appeared that the substitution was made by their approval, and if, knowing it, they failed to bring it to the notice of the judge and to obtain his sanction to the change, which should have appeared of record. A party might be willing to be tried by one man and unwilling to be tried by another. Prejudice might exist against him, though he was not personally known to the juror, originating in information the juror has received of his business or personal relations, and from what he has heard of his associations or habits of life, and which the defendant might have ascertained and guarded against, had he been apprised of the juror's name and identity. The defendant swears that Jones, from what he had heard of him, was very acceptable to him as a juror, and that he thought he was getting him as one of his triors, and that he placed reliance on him; whereas he got Jobson, who was never drawn or returned upon the panel, and who, to say the least, got on it surreptitiously. We therefore order a new trial solely on the third ground of the motion.

Judgment reversed.