BURNS *vs.* THE STATE OF GEORGIA.

1. Charles W. Foster, a colored person under twenty-one years of age, who was not upon the official jury list of the county, but who was actually serving upon the regular panel under the name of

Charles Foster, should have been challenged for cause *propter de-fectum* before he was accepted and sworn: The discovery after-wards that he was not another Charles Foster, a white man, who was a competent juror and whose name was on the official list, but who was not sworn of the panel, will not work a new trial. Due diligence would have led to the discovery in due time.

2. The charge of the court that the policeman might use all the force that was necessary to effectuate the arrest and overcome resist-ance, sufficiently covered the facts in evidence tending to show that the object of the beating was to prevent escape, or to arrest and keep under arrest, or in self-defence. And the remark of the judge (in responding to a request to charge further on the first of these topics), that he did not consider the request applicable to the case, was not such error as to require a new trial.

3. An officer of the law cannot justify an assault and battery upon his prisoner, on the ground that the beating was provoked by the use of opprobrious words or abusive language. Section 4694 of the code applies between private persons, not between public offi-cers and those in their custody.

4. Insolence from a colored prisoner to a white policeman is no ex-cuse for beating the prisoner with a club. Policemen shall do right, not less towards one color than another, in so far as it de-pends upon this court to administer the rules of law to their con-duct.

March 28, 1888.

Jury and jurors. Charge of court. Practice in supe-rior court. Officers. Policemen. Criminal law. Before Judge ADAMS. Chatham superior court. December term, 1886.

Reported in the decision.

CHISHOLM & ERWIN, for plaintiff in error.

F. G. DUBIGNON, solicitor-general, for the State.

BLECKLEY, Chief Justice.

1. Burns, being a policeman of the city of Savannah, was indicted for an assault and battery upon Burney, a col-ored man, committed in January, 1887. He was tried and convicted. His counsel made a motion for a new trial,

on several grounds, which was overruled. One of the grounds draws after it several others, because the others are dependent upon it; the subject-matter of the whole of these grounds being that one of the jurors, Charles Foster, by name, a colored person, was upon the jury improperly; that he was incompetent as a juror because he was an infant, and because he was not upon the list of jurors selected by the proper authorities as competent to serve; in other words, that he was open to challenge *propter defectum*, on two grounds: (1) that he was not twenty-one years of age; and (2) that he was not a legal juror at all, and was not qualified to be a juror, not having been put upon the jury list of the county. Counsel conceding in the argument here that, according to the authorities, these causes of challenge would ordinarily have to be presented before the jury was sworn (and in this case they were not brought to the attention of the court until afterwards), seeks to excuse himself upon the ground that it was a case of mistaken identity, resembling that of *Stripling vs. The State,* decided at the October term, 1886, 77 *Ga.* 108.

The juror's name, fully expressed, was Charles William Foster, and not merely Charles Foster. There was a Charles Foster, a white man, upon the jury list, who was competent; and counsel or client, or both, thought that the Charles Foster on the jury was a white man, and not a colored man; and if the Charles Foster upon the jury had been the one they thought he was, they would have had no cause of complaint. But this juror was one of the regular panel, we may assume, since it does not appear that he was a talesman. And we hold that counsel and parties must find out who are on the regular panel, if the jurors are there by their proper names. This juror was Charles Foster, and there is no law requiring that the middle initial, or middle name, shall be given. This man was there by his own name—his own right and proper name, but not as fully expressed as is often done. It was not like the case of *Stripling vs. The State,* October term,

1886, where the juror was concealed, as it were, under another man's name. Here there was no concealment of the juror in that way. He appeared openly by his own name. Counsel and client ought to have ascertained, before they accepted him, whether he was a competent juror or not. And we think the case falls within the general rule that causes of challenge *propter defectum* must be presented at an earlier stage of the case. While the accused and his counsel did not know all the facts, we hold that in the exercise of due diligence they might and ought to have known them.

2. It is complained that the court refused to charge on beating to prevent escape, to arrest and keep under arrest, and in self-defence; and that being requested to charge specifically on these topics, the court made the remark to, or in the hearing of, the jury, as to the first, to-wit, escape, that he did not consider the request applicable to the case. In view of the explanation made by the judge in his ruling upon the motion for a new trial, as to what he did charge in his general charge (no copy of which, we regret to say, is in the record,—but we take it as he expounds it), we think there was no substantial error in these grounds. The court advised the jury that if Burney was disorderly, the accused had the right to arrest him, and to use all the force that was necessary to make the arrest effectual; and that if Burney resisted, the accused was justified in using such force as was necessary to compel submission.

There was no very great danger of an escape. The disturbance was in a railroad enclosure, with a police officer at the gate, guarding the gate, and the negro could not very well get through there without a pass, according to the regulations, especially as he had a dray. We think the officer was tolerably secure against any escape, without knocking the negro down with a policeman's club. The negro was stricken twice; one blow felled him to the ground; the other, I believe, did not; but there were two wounds upon the head, one a laceration of the scalp,

drawing blood, and the other a contused wound. There was not much self-defence in it, and very little escape, and no apparent justification for the use of these violent means to make the arrest. The police force could have made the arrest and effectuated it apparently without resorting to such extreme violence; and the charge of the court on this subject went as far, on the whole, as the evidence did, and we think there was no impropriety in declining to give the request, and very little in making the remark complained of. Perhaps it would have been better not to make it; but it is not cause, we think, for a new trial, under the facts of the case.

3. Another ground is, that the court was requested to charge in terms of section 4694 of the code, that the use of opprobrious words or abusive language by the negro to the policeman might amount to a justification, or might not, according to the nature and extent of the battery. The court declined to give this charge, on the ground, as it appears, that the section was not applicable as between a prisoner and a policeman; and we think that is a correct construction. We think that an officer to keep the peace cannot suffer himself to be overcome by opprobrious words or abusive language while he is acting as a minister of the law, armed with legal power, and exerting it over a prisoner; he cannot chastise his prisoner for insolence; he cannot yield to his passions and take the administration of punishment, as it were, into his own hands. This section of the code was made to apply between man and man, and not between officer and prisoner.

4. It was suggested in argument that a white man will not take insolence from a negro, and we suppose it was meant for us to note that virtue or infirmity (whichever it may be) in expounding and administering the law, or it would not have been mentioned. What we have to say on that subject is this: The duty of an officer to a colored prisoner is not different in any respect from his duty to a white prisoner. He must do right to a colored man

as well as to a white man, and obey the law. Judges, including ourselves, must do right to people of all colors; jurors ought to do it, and policemen shall do it, so far as it depends upon us to administer the rules of law to their conduct.

We are satisfied with the verdict in this case, and affirm the judgment refusing a new trial.

Judgment affirmed.