## 448.  SHERMAN *v.* THE STATE.

1. Evidence obtained by illegal seizure and search of the defendant's person, by which he is compelled to criminate himself, being inadmissible against a defendant accused of crime, the burden devolves upon the State to show that evidence obtained by search was procured after a legal arrest. Proof that the arrest was legal is not made by the statement of a witness that the arrest was made under a warrant. The conclusion of a witness that a given paper is a warrant under which an arrest may legally be made is not proper proof that such a paper is in fact a warrant by virtue of which a legal arrest has been made, so as to authorize the admission of evidence obtained by means of an arrest under such paper or alleged warrant.

2. Where a juror, properly rejected by either party to a cause, serves without the knowledge or consent of such party and his counsel, and, unknown to such party or his counsel, participates in the finding and rendering of a verdict in the case, a new trial should be granted on the motion of such party.

Accusation of carrying concealed weapon, from city court of Americus—Judge Crisp. April 13, 1907.

Submitted May 27,—Decided June 19, 1907.

*Howell B. Simmons,* for plaintiff in error.

*Zach. Childers, solicitor,* contra.

RUSSELL, J.  Ed Sherman was tried and found guilty of the offense of carrying concealed weapons. He moved for a new trial, and his motion was overruled. It is only necessary to notice the amended grounds of the motion. These were two in number. In the first it is insisted that the court erred in refusing to exclude the testimony of the State's witness, upon the ground that a legal arrest was not shown, because it did not appear that the party arresting had a warrant against the defendant, and because it must appear that the arrest was legal, before the testimony would be admissible. The second ground was that "only eleven of the jury selected to try the case served, and that in place of W. A. Stephens, one of the jury selected to try the case, was put or voluntarily went in one W. H. Justice, a member of the panel of the jurors that had been stricken." With regard to the second ground of the motion, the presiding judge qualifies his approval by the following note: "Two jury lists were handed out and a jury stricken. The jury was called, and twelve jurors took their places in the jury box, after being duly sworn. The solicitor and

defendant's counsel both made their opening statements to the jury. Evidence was then introduced, and at its conclusion the case was argued by the solicitor and the defendant's counsel. The jury retired, and later the court was notified the jury had made a verdict. The court had the jury brought into the court-room, and the foreman reported the jury had made a verdict. The court instructed the solicitor to receive it, which was done, and the verdict read and published in open court. As soon as the verdict was read and published, Mr. Simmons came up to the bench and informed the court privately he thought one of the jurors who served had been stricken. The court informed Mr. Simmons he knew nothing of the matter, but would have the jury called, which was done, and one of the jurors had been stricken. Mr. Simmons here in open court requested the court to declare a mistrial, which the court refused, saying the motion came too late, as the verdict had been rendered, received, and published in open court." The ground of the motion with reference to the juror was verified by the affidavit of Mr. Simmons, defendant's attorney, who swore that his client did not know any member of the jury, and that the jury was stricken by him in behalf of his client. He further swore that Justice was stricken by him, and would not, in any event, have been accepted by defendant, or by him as defendant's counsel, in a case where the rights of a negro (defendant being a negro) were concerned. The affidavit of counsel further showed that the defendant and his counsel relied upon the officers to see that the jury selected served, for the reason that the defendant knew none of the jurors, and his counsel was not acquainted with all of those selected; further, that the defendant's counsel is near-sighted, and did not have on his glasses, and did not notice that said Justice was on the jury until the jury had made a verdict. The jury list used upon the trial, a copy of which is attached to the record, shows that W. H. Justice was stricken by the defendant.

The court was right in refusing to declare a mistrial. The motion to declare a mistrial came too late. But we think that the defendant is entitled to a new trial, and that our learned brother of the trial bench erred in overruling the motion. The only evidence introduced for the State was that of the witness Gatewood, who testified as follows: "On October 5, 1906, I

arrested Ed Sherman, the defendant, and carried him to the jail, and in his right hip pocket he had a pistol concealed. I found it there when I went to search him, before locking him up. I had a warrant for him when I made the arrest. This was in Sumter county, Ga. I had one of the warrants, and M. Holloway had the other, when the arrest was made. I do not know who issued the warrant that I had; will not say that it was issued by Judge Crisp or Judge Suber. But I had a warrant for him—one of the two warrants that I have in my hand." The defendant's counsel moved to rule out the testimony of Gatewood, as it did not show a legal arrest. We think this motion should have been sustained. The State is required to prove its case by legal evidence. From the evidence adduced it is not shown whether the arrest was or was not a legal arrest; and the testimony could not affect the rights of the defendant, or be used to convict him, until it was shown affirmatively that the defendant had been legally arrested. As this court has already held, in the case of *Hughes* v. *State, 2 Ga. App.* 29, 58 S. E. 390, "evidence of guilt which the defendant, either directly or indirectly, is compelled to disclose by an unlawful search and seizure of his person under an illegal arrest, is not admissible in a criminal prosecution against the person thus illegally arrested." The law requires a warrant, in order to render an arrest legal, unless the offense is committed in the officer's presence, or the offender is endeavoring to escape, or there is likely to be a failure of justice for want of an officer to issue a warrant. See *Hughes* v. *State,* supra. The arrest in this case may have been legal, and it perhaps could have been shown that the defendant was arrested on a warrant. But it devolved upon the State to show that the defendant was arrested on a warrant, and the State failed to prove it. The testimony of Gatewood, that he had a warrant for him and that he was arrested on one of the two warrants that he had in his hand, was nothing but the mere conclusion of the witness that the paper was a warrant. The paper itself, if it was a warrant, was the best evidence of what it contained, and as to whether it was or was not really a warrant. The conclusion stated by the witness was not only objectionable, because it involved a statement of the contents of a paper upon which depended, perhaps, the liberty of defendant, but, further, because the answer of the witness assumed to pass

upon the sufficiency of the contents of that paper to constitute a valid warrant authorizing the defendant's arrest. The statement of the witness could not prove the paper to be a legal warrant, even if the paper had been lost and parol evidence of its contents were thus admissible. Not to say more, the answer of the witness assumed that the paper under which the defendant was arrested was issued by an officer authorized to issue warrants upon a proper affidavit, and that it set forth the violation of a penal law. If the defendant was arrested upon a legal warrant, proof of that fact was not made by the statement of a mere conclusion of the witness; and, as it was not shown that the defendant was legally arrested on a warrant, the evidence obtained by reason of his arrest should have been excluded. If the paper really was a warrant, the State could easily have put it in evidence.

We think, too, that a new trial should have been granted upon the ground that Justice served upon the jury, instead of Stephens, after having been rejected by the defendant. The case at bar is nearly identical with the case of *Stripling* v. *State*, 77 *Ga.* 108, 3 S. E. 277. It is true that in the *Stripling* case neither the defendant nor his counsel knew the juror who served, while in the present case the defendant's counsel did know the juror Justice; but the testimony that the counsel is near-sighted and did not see Justice on the jury, or know that he was there, until the jury came to render their verdict, is not disputed, and otherwise there is no difference in the two cases. It does not appear how Justice came to be substituted for Stephens; and, as remarked in the *Stripling* case, "it is somewhat remarkable that the substitution was not discovered and corrected at an earlier period." But in the *Stripling* case, as in this, the mistake was not discovered until after the trial was over. In that case Jobson was substituted for Jones, and Jones was an acceptable juror (as Stephens was in this case), while Jobson would have been a very unacceptable one ('as Justice appears to have been in this case). "The allegation, in short, is that the defendant was tried by only 11 jurors of his own selection, and he asked, therefore, that a new trial be granted him upon this and other grounds, which, as before stated, the court refused. This refusal we are satisfied was error." There might have been exceptions made to Justice propter affectum, if the defendant had desired to urge them; but,

however this may be, the record shows that the defendant had used his right to strike Justice, and thereby peremptorily challenged him. The defendant had the right to be tried by the 12 jurors selected; and, if it be true (and it is not contradicted) that neither the defendant nor his counsel knew Justice was on the jury until after the verdict, he was entitled to a new trial. If the affidavit of the defendant's counsel is true, "Somebody other than the defendant or his counsel was evidently to blame," and it is not material whether it was called to the attention of the judge prior to the motion for new trial. That the right to a jury of one's own selection may be preserved by motion for new trial, see Dovey *v.* Hobson, 6 Taunton, 461.

In our examination of this question we have found two cases in which a new trial was held to have been properly refused where one juror was substituted for another; but neither of those cases is similar to this case. In the case of *Anderson* v. *Green*, 46 *Ga.* 362, a juror was selected by both parties, and another answered to his name and served in his stead, and the Supreme Court held that that was not a good ground for new trial, as it did not appear that both the substitute and the principal were unknown to the defendant and his counsel. The difference between the *Anderson* case and the case at bar is that the person who served had not been rejected. In the present case Justice had been peremptorily challenged and stricken from the list by the defendant. Nor was any reason shown or offered to be shown in the *Anderson* case why the person who served was for any cause objectionable to the defendant. And the case of *Burns* v. *State,* 80 *Ga.* 545, 7 S. E. 88, is unlike this case, as that case was held by the Supreme Court to be unlike the *Stripling* case, because in the *Burns* case the juror Charles Foster, who served, was accepted by the defendant, and the court held that, while the accused and his counsel did not know all the facts, yet in the exercise of due diligence they ought to have known, before accepting the juror, whether the juror they accepted (Charles Foster, a negro, instead of Charles Foster, a white man) was 21 years of age or a minor and whether he was upon the jury list of the county. In other words, the extent of the holding in that case was that an exception propter defectum to a juror accepted by a party on the trial could not be considered on a motion for new trial; but, from what appears.

here, this defendant, after having positively rejected the juror, was tried by him without fault on his part. To refuse him a new trial, under this state of facts, would be to deprive him of his right of peremptory challenge.　　　*Judgment reversed.*