[Crim. No. 18. First Appellate District.—April 25, 1908.]

## THE PEOPLE, Respondent, v. EDWARD DUNCAN, Appellant.

CRIMINAL LAW—IMPANELMENT OF JURY—CHALLENGES FOR ACTUAL BIAS—REVIEW UPON APPEAL.—The overruling by the trial court of challenges for actual bias will not be reviewed upon appeal, either when no actual bias is shown, or when an opinion formed from newspaper reports is shown, to the satisfaction of the trial court, not to prevent the juror from acting fairly and impartially upon the trial of the case. It is only when the evidence upon the examination of a juror is so opposed to the decision of the trial court that the question becomes one of law, that the appellate court can review its decision.

ID.—MURDER—EVIDENCE—DECLARATIONS OF DEFENDANT—STATEMENT OF WITNESS—HARMLESS RULING.—When, upon a trial for murder, a witness for the prosecution stated that he saw defendant on the evening of the homicide, and that defendant then asked the witness whether he was "a union man or a scab," and that he told him he was neither, and that he could not remember what reply defendant made, whereupon he was asked if he had not stated on a designated occasion to persons named, that defendant replied that he would be "an interested spectator," the overruling of an objection thereto was harmless, where the witness replied that he was rattled, and did not know exactly what he said to them, and there was no subsequent attempt to show what he did say to the persons named.

ID.—REFRESHING OF MEMORY OF WITNESS.—A witness may be asked concerning statements made by him for the purpose of refreshing the memory of the witness.

ID.—TESTIMONY FOR DEFENDANT—REBUTTAL—TESTIMONY UPON TRIAL OF CODEFENDANT—ABSENCE OF CONFLICT—HARMLESS ERROR.—Where one eye-witness of the homicide testified for the defendant, it was error over defendant's objection to admit the testimony of a shorthand reporter, as to what the witness testified on the trial of a

codefendant, but such error is harmless, where there is nothing in such testimony tending to contradict the witness.

ID.—OBJECTION TO TESTIMONY NOT SHOWN BY RECORD.—An objection to testimony, where the testimony objected to and the foundation for the objection did not appear on the record, is without support.

ID.—COLOR OF HAT WORN—HEARSAY EVIDENCE—REBUTTAL.—Where a witness for the defendant had testified to hearsay evidence as to the color of a hat worn, defendant cannot object to rebuttal evidence as to the actual color of such hat.

ID.—SUBSTITUTION OF JUROR IN IMPANELMENT—OBJECTION AFTER VERDICT.—Where, in impanelment of the jury, a father, being a qualified juror, was substituted for his son on the panel, and no objection was made to his qualification, and he was sworn to try the case, it cannot be objected after verdict, either that the juror was disqualified, or that the impanelment of the jury was void for that reason.

ID.—INFORMATION OF COUNSEL—BINDING DEFENDANT—SUPPORT OF FINDING.—Where it appears that counsel for the defendant has information of the substitution, prior to the verdict, and they have refused to disclose the time of such information, which is peculiarly a fact within their knowledge and within their power to prove, the court was justified in finding that they had information thereof prior to the submission of the cause to the jury; and their information was binding upon the defendant.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. Wm. P. Lawlor, Judge.

The facts are stated in the opinion of the court.

H. W. Hutton, and M. J. Kuhl, for Appellant.

U. S. Webb, Attorney General, and George Beebe, Deputy Attorney General, for Respondent.

HALL, J.—Defendant was jointly charged with three others, Wm. Buckley, Thomas Moran and Charles Donnelly, with the crime of murder, for the killing of one George W. Rice, in the city and county of San Francisco on the ninth day of August, 1901. Upon his trial he was found guilty of murder in the second degree. He interposed a motion to vacate the verdict as well as a motion for a new trial, and both motions being denied, judgment on the verdict was

pronounced, and defendant in due time took this appeal from the orders denying his said motions and from the judgment.

Judgments against the other defendants have heretofore been sustained. (*People* v. *Buckley,* 143 Cal. 375, [77 Pac. 169] ; *People* v. *Donnelly,* 143 Cal. 394, [77 Pac. 177] ; *People* v. *Moran,* 144 Cal. 48, [77 Pac. 777].)

Several grounds are urged for the reversal of the judgment and orders, which we will discuss in the order presented in appellant's brief.

1. The defendant challenged two jurors, Axt and Peters, under subdivision 2 of section 1073 of the Penal Code. This section of the code provides that a juror may be challenged "for the existence of a state of mind on the part of a juror in reference to the case, or to either of the parties, which will prevent him from acting with entire impartiality and without prejudice to the substantial rights of either party."

The juror Axt on his *voir dire* testified that he had no prejudice against organized labor, though his men had joined in a strike; that he would believe a charge of conspiracy made against laboring men belonging to a labor organization "because there must be more organization there," and more to the effect that he would more readily believe that a member of a labor organization would enter into a conspiracy than an ordinary individual, though he further said that such belief would not make him prejudiced. The court disallowed defendant's challenge interposed for actual bias as above stated, and in so doing committed no error. At the time the challenge was interposed there was nothing to indicate to the court that defendant was a member of any labor organization, or that any such claim would be made either by the prosecution or the defense. So far as the record shows, no statement or showing had been made by either counsel which would indicate that such condition existed or would be claimed to exist, or that the homicide grew out of, or was connected with, any labor trouble, or that defendant or any of his codefendants belonged to any labor organization. The evidence before the court at the time of the ruling complained of did not show any bias on the part of the juror either against defendant or with relation to the case. The court, therefore, did not err in disallowing the challenge to juror Axt.

The juror Peters testified that he had formed the opinion from newspaper reports that he had read that George W. Rice had been murdered, but also said that he would put aside that opinion, and would act wholly upon the evidence brought before the court, and that he could act fairly and impartially upon the case. Some of his statements were somewhat in conflict with the above, but his whole examination presents a case for the judgment of the trial court. This court is only allowed to review an order denying a challenge upon the ground of actual bias, when the evidence upon the examination of the juror is so opposed to the decision of the trial court that the question becomes one of law, for it is only upon questions of law that this court has appellate jurisdiction in criminal cases. (*People* v. *Owens,* 123 Cal. 487, [56 Pac. 251].) We cannot say that the court erred in its ruling upon the challenge to the juror Peters.

2. One Stewart, an acquaintance and former shopmate of defendant, was called as a witness for the prosecution, and testified that he saw defendant the evening that Rice was killed; that Duncan asked him (the witness) if he was a union man or a scab, and that he replied that he was neither. Thereupon the district attorney asked the question: "When Duncan asked you if you were a union man or a scab, and you told him you were neither, what did he say to you?" To this the witness answered, "I don't remember what he said." Several more questions were addressed to the witness in an attempt to learn from him what Duncan had said to him, and to which the witness answered that he could not remember. The district attorney then asked the witness if he had not stated on a designated occasion to Mr. Alford, Mr. Byington, Mr. Greany and Officer Bailey that Duncan had said "that you would be an interested spectator." To this question defendant objected, and the court overruled the objection, stating that he allowed the question solely for the purpose of refreshing the memory of the witness. The witness answered, "I don't know what it was exactly I said. They brought me in there, and I was rattled, and don't know what I said." A similar question was then asked the witness, and allowed over the objection of defendant, to which he answered, "I don't remember what the words were that I used, or what I said."

If it be conceded that the court erred in its rulings upon these questions, the defendant was not harmed thereby. The prosecution did not attempt subsequently to contradict the witness, or to show what he did state to the four men named. The case is, therefore, not brought within the rule laid down in *People* v. *Creeks,* 141 Cal. 529, [75 Pac. 101], and the cases therein cited, that it is error for a party calling a witness, who fails to give expected testimony, but does not give affirmative testimony against the party, to prove statements of such witness. The witness answered that he did not remember what he did say to the men named, and no effort being thereafter made to show what he did say to them, no harm was done defendant. (*People* v. *Wallace,* 89 Cal. 158, [26 Pac. 650].)

But the court in allowing the question stated that it did so for the purpose of refreshing the recollection of the witness and none other. The witness had stated that Duncan had held a conversation with him, but said that he could not remember what Duncan had said. It has been held that a witness may be asked concerning statements made by such witness, for the purpose of refreshing his memory. (*White* v. *State,* 87 Ala. 24, [5 South. 829]; *Bullard* v. *Pearsall,* 53 N. Y. 230.)

In *People* v. *Durrant,* 116 Cal. 212, [48 Pac. 75], a witness testified that when he returned to the church he found Durrant either standing in the lobby, or lying on the platform in the schoolroom, but in which place he could not remember. It was held that the party calling the witness could, for the purpose of refreshing his memory, read to the witness his former testimony given on the same subject. But whether or not the court was justified in allowing the questions, it is clear from the answers of the witness that no harm was done. (*People* v. *Wallace, supra.*)

3. One Rohrer was examined as a witness on behalf of defendant. He testified that he was driving a team, was moving slowly, heard two shots, and that he turned himself around toward Shotwell street. From this point on he was an eye-witness to what occurred and gave testimony as to what he saw. Over the objection of defendant the district attorney was allowed to prove by one Elderkin, a shorthand reporter, that on the trial of a codefendant of the appellant,

Rohrer had testified as follows: ''Q. Did you stop your horses after you heard the shots? A. No, sir. Q. You did not? A. No, sir.''

Rohrer had not been asked anything about his testimony given on the trial of the codefendant, and it certainly is difficult to understand on what theory the testimony of Elderkin was allowed. It certainly did not contradict anything that Rohrer had testified to in this case. The record shows that defendant moved to strike out this testimony of Elderkin ''on the ground that it is not inconsistent with what the witness testified to here, but, on the contrary, it is precisely at this trial as it now appears from the testimony of the rebuttal that he testified to at some other time and place.'' With the statement as to the testimony of Rohrer on the two different occasions we entirely agree. The testimony read by Elderkin did not in any degree tend to contradict what the witness Rohrer testified to in this case, but is in entire accord with it. For this reason it is inconceivable that the introduction of the evidence in question could have prejudiced the defendant. It could not have had the effect to discredit the witness Rohrer, for it in no way contradicted him, but, as stated by counsel in his motion to strike out, it was precisely in accord with his present testimony.

While the court should have sustained defendant's objection to the evidence of Elderkin, it is clear that the ruling of the court could not have injured defendant.

4. Appellant's next point is not supported by anything that we can find in the record. In his brief he says that upon the trial of Duncan (appellant) one Oppenheim was a witness, and that the prosecution was allowed to prove by one Mann that Oppenheim was not a witness upon the trial of appellant's codefendant, Buckley, and urges that this was done to discredit the witness Oppenheim, whose testimony he claims was favorable to defendant. After a careful examination of the record we fail to find that Oppenheim was a witness on the trial of defendant, and we are equally unable to find that Mann testified that Oppenheim *had not been a witness* on the trial of Buckley. Appellant's contention thus falls for want of the necessary premise to support it.

5. The court did not err in allowing the witness Graham to testify that the witness Kinnear had said nothing about a hat. This was rebuttal of testimony given by the witness Kinnear on behalf of the defense upon his redirect examination by counsel for defendant. He testified that in a conversation with Officer Fitzgerald, "I told him I saw by the papers that the fellow had a white hat, but I would have to say he had a dark hat on." It may be said that this was hearsay and incompetent, but as it was introduced by defendant, it does not lie in his mouth to say that the prosecution should not be allowed to rebut and contradict such testimony. This was all that was done by the evidence of the witness Graham now complained of.

6. The last point presented by appellant for consideration is the one most strongly urged by his counsel, and is predicated on the fact that one Bernard Sherry appeared at the trial, and substituted himself as a juror in place of John H. Sherry, whose name was upon the jury list, and who had been regularly subpoenaed to attend court as a trial juror.

From the record it appears that upon the impanelment of the jury to try defendant the name of John H. Sherry was drawn from the jury-box, and in answer to such a name a person took his place in the box, and was sworn to answer questions as to his qualifications to act as a juror, and was examined by the court, by the district attorney, and by the attorney for defendant, was accepted and sworn as a juror, and acted as such throughout the trial of the case.

After the announcement by the foreman of the jury of their verdict, the jury were, at the request of counsel for the defendant, polled, and each answered that the verdict rendered was his verdict, and the court directed that the verdict be recorded. Thereupon one of the counsel for defendant addressed the court in the following language: "Before this jury is discharged, I will ask, is there any juror in the box who was not subpoenaed in this case, whose name was never in the jury-box, and who was not sworn under his true name to try this case?"

At the request of counsel for defendant a poll of the jury was taken upon the question thus propounded, and when the name of John H. Sherry was called one of the jurors answered that his name was Bernard Sherry, that his son John

H. Sherry had been subpoenaed, but that he, Bernard Sherry, had served in place of his son.

Counsel for defendant at once moved to vacate the verdict because of the irregularity thus brought to light. The motion was denied. Upon the arraignment of defendant for judgment defendant renewed his motion to vacate the verdict, and also made a motion for a new trial. The two motions were heard together, and were both denied.

Upon the hearing of the motions, affidavits and evidence from the record were read, mainly directed to the point as to when defendant or his counsel learned or received information of the substitution of Bernard Sherry in place of John H. Sherry. In passing upon each of said motions the court expressly found "that counsel for defendant had information prior to the submission of the cause to the jury concerning the substitution of Bernard Sherry for John H. Sherry on the jury panel and as a juror in said cause."

Appellant upon this appeal challenges this finding as not being supported by the evidence, and especially does he insist that no weight should be given to an affidavit by one T. J. Bailey, to the effect that in a conversation which he held with one of the counsel for defendant, said counsel stated that he did not know of the substitution of Bernard Sherry for John H. Sherry until the Thursday preceding the day of the rendition of the verdict. The record discloses that the cause was submitted to the jury on Friday, and its verdict rendered the same day.

Among other reasons urged for rejecting the affidavit of Bailey is that the statement of counsel for defendant to the affiant was, as against defendant, mere hearsay, and therefore incompetent evidence as against him. But we are of the opinion that the court was justified in finding as it did, irrespective of anything contained in the affidavit of Bailey.

Immediately upon the rendition of the verdict Mr. Barrett, one of the counsel for defendant, propounded the question, "Is there any juror in the box who was not subpoenaed in this case, whose name was never in the jury-box, and who was not sworn under his true name to try this case?" The propounding of this question is quite convincing that counsel at that time had information of the facts suggested by the question. It is not at all reasonable to suppose that

counsel was engaged in what is sometimes called a "fishing excursion."

Further, upon the hearing of the motions appellant filed an affidavit by himself, and affidavits by each of his counsel. In his own affidavit he stated that he had no knowledge and no information of the substitution now complained of until after rendition of the verdict. In the affidavits made by counsel each states that he had no knowledge of such substitution until after rendition of the verdict, but makes no mention of when he obtained *information* on the subject. That this was not an inadvertence, but was intentional and designed, is made perfectly clear by what subsequently transpired. Counsel for the people called attention to the omission of any statement in the affidavits of counsel as to when they obtained information concerning the substitution, and made an earnest effort to induce such counsel to submit to an examination under oath as to such matter, which counsel refused to do; and during the discussion which ensued before the court counsel for defendant made this statement: "There is no issue in the first place tendered on the question of information by that affidavit. There is no issue tendered by us."

What information counsel had received that prompted the question that brought forth the disclosure of the substitution was a matter peculiarly within their knowledge and within their power to prove, and the same is true as to when they received such information. Evidence is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is within the power of one side to produce, and of the other to contradict. (Code Civ. Proc., sec. 2061, subd. 6.)

From the foregoing facts we are satisfied that appellant cannot justly complain of the finding made by the court. There can be no doubt that a defendant is chargeable with knowledge of information obtained by his counsel. (17 Am. & Eng. Ency. of Law, 1169.)

There is nothing in the record to suggest, and there is no claim made, that either the court, the district attorney, or anyone connected with his office or the prosecution, had any knowledge or information concerning the substitution of Bernard Sherry for John H. Sherry until the disclosure elicited

by counsel for defendant after the rendition of the verdict. And no claim is made that Bernard Sherry was not in fact a fair and impartial person to act as a juror. His examination on his *voir dire* discloses that he was entirely impartial.

The question is thus presented, May a verdict be vacated and a new trial granted upon an objection to a juror made for the first time after verdict rendered that he was not the person who was selected, subpoenaed and returned to serve upon the panel?

Upon the question the authorities in other states are not in accord. The rule generally followed is that any objection to a juror must be made before he is sworn, and comes too late after verdict. "In many cases it has been expressly decided that the right to attack a verdict for the disqualification of a juror does not exist even when the moving party was perfectly ignorant of such disqualification, and that to allow a subsequent attack upon the verdict for that cause would give a wide opening for fraud. In a still larger number of cases it is simply stated that there is no right to attack a verdict on this ground, without any reference to the question of previous ignorance or knowledge, and that may be considered also to support the proposition that ignorance is immaterial." (17 Am. & Eng. Ency. of Law, 2d ed., 1163.)

In England there seems to be considerable flexibility in the practice where a substitution has occurred such as exists in the case at bar, it being considered a matter of discretion with the court. In the very early case of *Norman* v. *Beaumont,* Willes, 484, a new trial was ordered; so, also, in *Dovey* v. *Hobson,* 6 Taunt. 460, a new trial was ordered, as a matter of discretion, though the irregularity was discovered before verdict; while in *Hill* v. *Yates,* 12 East, 229, where the substitution was discovered after verdict, a new trial was refused, the court saying that it was a matter of discretion.

Coming to the United States, we find, as before stated, that the authorities are not in accord.

In *Dayton* v. *Church,* 7 Abb. N. C. 367, a stranger answered and served in place of one of the panel, which was not discovered until after verdict, and a new trial was ordered.

In *McGill* v. *State,* 34 Ohio St. 228, a new trial was ordered though the substitution was not discovered until after ver-

dict, but in Ohio the law concerning the granting of new trials is much broader than in this state.

In *Urquhart* v. *Powell*, 59 Ga. 721, it was held that the fact that the name of one of the jurors who tried the case was neither in the jury-box nor on the jury list was no ground for a new trial after verdict; but in the later case of *Stripling* v. *State*, 77 Ga. 108, [3 S. E. 277], a new trial was granted because of a substitution, the court saying, also, that it made no difference whether the court's attention had been called to it before verdict or not.

In a still later case, however, *Dasher* v. *State*, 113 Ga. 4, [38 S. E. 348], the case of *Urquhart* v. *Powell*, 59 Ga. 721, is cited with approval. So, too, in *Stripling* v. *State*, 77 Ga. 108, [3 S. E. 277], the court cited the earlier case of *Anderson* v. *Green*, 46 Ga. 361, with apparent approval, where it was held that a substitution such as exists in this case was no ground for a new trial. The Georgia statute seems to authorize the court to order a new trial, in cases not expressly provided for by the code of that state, in the exercise of a sound discretion, "according to the provisions of the common law and practice of the court." The new trial in the Stripling case seems to have been ordered in the exercise of this discretion.

Upon the other hand, in *Mann* v. *Fairlee*, 44 Vt. 672, where the wrong man was summoned and served without discovery until after verdict, a new trial was refused. To the same effect is *Commonwealth* v. *Bencher*, 10 Pa. Co. Ct. 3. So, too, in *Commonwealth* v. *Parsons*, 139 Mass. 381, [31 N. E. 676], the wrong juror answered to a name that was called, and served, and a new trial was refused.

In *Talbert* v. *State*, 71 Miss. 179, [42 Am. St. Rep. 454, 14 South. 462], the wrong man was summoned and served, the mistake not being discovered until after verdict. A new trial was refused, the court saying: "The right of the defendant is to have an impartial jury rather than one composed of particular persons, and where this right has been enjoyed there is little cause for complaint, ordinarily, after verdict. An acquittal by such a jury would avail the defendant, and having had a chance of escape at the hands of the jury, he could not be allowed to profit by an innocent mistake or inadvertence which fact did him no harm."

No case has arisen in this state precisely like the case at bar in its facts. But by reason of the provisions of our statute and the decisions thereon, we think it must be held that the objection to the juror came too late. The statutes clearly intend that any challenge to the panel or to an individual juror must be taken before the juror is sworn to try the cause (Pen. Code, secs. 1060 and 1069), and the fact that the disqualification was not discovered until after verdict makes no difference in the rights of the defendant.

In *Thrall .v. Smiley,* 9 Cal. 529, the name of one of the jurymen was not on the *venire* returned by the sheriff, though he had in fact been summoned and his name placed in the box and entered in the minutes of the court. In disposing of an objection made for the first time after verdict the court said: ''The objection, if it had any validity, should have been urged at the trial; it comes too late after verdict. The object of the law is to secure honest and intelligent men for the trial, and it is of no practical consequence in what order or at what time during the term they are summoned. It would be productive of great hardship to permit a second trial upon a ground so technical and unsubstantial. Unless the irregularity complained of in the formation of the jury goes to the merits of the trial, or leads to the inference of improper influence upon their verdict, their verdict should not be disturbed''; and quoted with approval similar language used by Shaw, C. J., in *Page* v. *Inhabitants of Danvers,* 7 Met. (Mass.) 327.

In *People* v. *Chung Lit,* 17 Cal. 321, it was held that objection because of the fact that one of the jurors was an alien cannot be taken for the first time on motion for a new trial, although the fact was not known until after the verdict. The court said: ''The defendants might have examined him upon the subject, and exercised their right of challenge before he was sworn, but having failed to do that they must suffer the consequences of their own neglect.''

In *People* v. *Fair,* 43 Cal. 137, it was held that the fact that a juror had formed and expressed an unqualified opinion of the guilt of the accused is not, under our practice, ground for a new trial, when the objection is taken for the first time after verdict; nor is it a ground for an arrest of judgment or a new trial under the statutes of this state.

This case arose under the provisions of the Criminal Practice Act, which are identical in this respect with the provisions of the Penal Code. In this case the court points out that the subsequently discovered disqualification of a juror is not made either a ground for an arrest of judgment or a new trial; that the statute provides in what cases a judgment may be arrested, and in what cases a new trial may be granted, and that the grounds thus provided are exclusive of all others. The reasoning of the Fair case seems to be conclusive of the case at bar, for although appellants in form made a separate motion to "set aside the verdict," no such motion is provided for in our code as distinct from a motion for a new trial or in arrest of judgment. In its effect it was a motion for a new trial, and under our practice it must be so regarded.

In *People* v. *Mortier*, 58 Cal. 262, the court again discussed at great length the right to raise, after verdict, the question of the disqualification of a juror, and held, notwithstanding the conflict in authorities in other states, that a judgment in such case should not be reversed because of the disqualification of a juror discovered after verdict. The court quoted with approval from the opinion of the court in *Bristow's Case*, 15 Gratt. (Va.) 648: "To permit prisoners to avail themselves after verdict of pre-existing objections to the competency of jurors, as a matter of right, would not only be unreasonable, but most mischievous in its consequences. The delays in the administration of criminal justice and the chances for the escape of the guilty would be greatly increased. Proper verdicts, specially in trials for grave offenses, would be continually set aside. A prisoner knowing, or willfully remaining ignorant of the incompetency of a juror, would take the chances of a favorable verdict with him upon the jury, and if the verdict should be adverse would readily enough make the affidavit necessary to avoid its effect."

To the same effect are *People* v. *Samsels*, 66 Cal. 99, [4 Pac. 1061] , *People* v. *Evans*, 124 Cal. 206, [56 Pac. 1024], and *People* v. *McFarlane*, 138 Cal. 481, [71 Pac. 568, 72 Pac. 48], in each of which it was held that it was too late after verdict to object to the competency of a juror.

The California cases above cited are all cases where the objection went to an individual juror, but the same rule has been applied to an objection to the entire panel. In *People*

v. *Ah Lee Doon,* 97 Cal. 171, [31 Pac. 933], the jury had been selected from a panel drawn by a judge who was disqualified to act in the case. In disposing of the question raised on a motion for a new trial the court said: "But if the jurors drawn and summoned in pursuance of Judge Angellotti's order were incompetent to try this cause, the objection should have been taken by a challenge to the panel, and if, for the purposes of this case, the act of the judge in ordering the jurors drawn was void, as counsel contend, then certainly the statute (Pen. Code, sec. 1059) is broad enough to have given the defendant good ground for challenge to the panel; and that was the regular and only way to raise the question. If it had been made at that time, and sustained, a special venire could at once have been issued. Raised for the first time after verdict it comes too late."

Our statute providing for challenges to an individual juror is certainly broad enough to allow a challenge upon the ground that the offered juror is not the man whose name is in the box and who was summoned. Such a person is not a qualified juror (Pen. Code, sec. 1072), because not selected and returned (Code Civ. Proc., sec. 198), and for that reason could be challenged before being sworn (*State* v. *Sternberg,* 59 Mo. 410; *Goodwin* v. *State,* 102 Ala. 87, [15 South. 571]). A challenge should be made when the juror appears. That is the regular and only way to raise the question of his competency. (Pen. Code, sec. 1068.) The objection to the juror Bernard Sherry came too late. The argument that he never became a juror because he was not selected and returned as required, and that therefore the verdict was but the verdict of eleven jurors, we think begs the question. He was accepted and sworn as a juror. He became a juror irregularly, it is true, but, to paraphrase the language of the court in *People* v. *Chung Lit,* 17 Cal. 321, the defendant might have examined him upon the subject, and exercised his right to challenge or objection before he was sworn, but having failed to do this, he must suffer the consequences of his own neglect.

The judgment and order are affirmed.

Cooper, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 24, 1908.