258 So.2d 65

**Grady RUTHERFORD**

v.

**STATE.**

**8 Div. 102.**

Court of Criminal Appeals of Alabama.

Feb. 8, 1972.

Ford, Caldwell, Ford & Payne and Robert L. Hodges, Huntsville, for appellant.

MacDonald Gallion, Atty. Gen., and Joseph Victor Price, Jr., Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Grady Rutherford, a policeman of the town of Gurley was indicted for an assault and battery upon Lloyd Stanley Keller. He was tried, convicted and sentenced to six months at hard labor.

The evidence for the state tends to show that in the early morning hours of September 14, 1969, Billy Van Hastings, Lloyd Stanley Keller and Jerry Wayne Holt were en route to Scottsboro from Huntsville. Hastings was driving Keller's automobile. Keller and Holt were asleep in the car. Just after passing through Gurley Hastings was stopped by a police car. Hastings got out of the car and Rutherford came up and asked for his driver's license. Hastings said his license had expired while he was overseas. Rutherford told him to walk the line to the police car and there Rutherford pushed him into the back seat and sprayed tear gas on him. After Rutherford shut the car door, he told Hastings he was under arrest for driving while intoxicated.

Rutherford then went back to the other car, got Keller out, brought him back to the police car and put him in the right rear seat. He closed the door on Keller's leg and started cursing him. Rutherford hit Keller on the leg four or five times with his billy club and Keller said, "Let up and I'll get my leg back in." Rutherford then brought Holt to the police car and put him in the right rear door. After Rutherford and Keller had called one another vile names Rutherford again sprayed them with tear gas and kept cursing them.

During the ride to Huntsville Rutherford and Keller cursed one another. Upon arriving in the basement garage of the courthouse in Huntsville, the defendant hit Kel-

ler with his fists. While they were going up to the jail in the elevator defendant slapped Keller's face, and while in the jail complex hit Keller several times. While Keller and Holt were booked into jail Rutherford and Hastings went to the Huntsville Hospital where Hastings was given a blood test and returned to the Madison County Jail. When they were inside the elevator Rutherford hit Hastings in the mouth and beat and choked him. When Hastings was being booked into the jail Rutherford hit him in the mouth with his fist and hit him in the back of the head with his gun.

Counsel's argument in brief is that the court erred in overruling the defendant's several motions to require the state to elect as to which incident involving Keller they intended to prosecute the defendant and also in overruling his objection to the admission of testimony concerning an assault on Hastings. It is insisted that Keller was arrested within the police jurisdiction of Gurley between 2:30 and 3:00 A.M., and was booked into the jail at Huntsville at 3:26 A.M., and the alleged several assaults took place during the trip from Gurley to Huntsville. Also, that since the indictment contained but one count charging an assault and battery on Lloyd Stanley Keller, the alleged assault on Hastings at a time after the alleged assaults on Keller had been terminated and Keller had been booked in jail, was inadmissible as a separate and distinct offense from that charged in the indictment.

■ We are opinion evidence of the several assaults on Keller and the assault on Hastings was admissible under the rule of one continuous transaction. Wilson v. State, 12 Ala.App. 97, 68 So. 543; Lowe v. State, 134 Ala. 154, 32 So. 273; Parsons v. State, 251 Ala. 467, 38 So.2d 209.

In Greenwell v. Commonwealth, 125 Ky. 192, 100 S.W. 852, the defendants were convicted of assault with intent to kill. The court said:

"The defendants objected on the trial to the evidence as to Webb Greenwell chok-ing Head, and also objected to the evidence as to his shooting Tom Newton. But it was all in effect one transaction. The way he had acted toward Head illustrated his animus, and showed what he wanted to do to the other members of the posse who had assisted in arresting him. The gist of the prosecution is malice. He had the same cause of complaint against Overton Newton that he had against Head, and the whole transaction could be given in evidence on the question of malice. The shooting of Tom Newton was, of course, a distinct offense from the wounding of Overton Newton, and was not included in the indictment; but it was all done in one transaction, and proof of the entire transaction was properly admitted to explain the motives actuating the parties. It was in fact one difficulty from the time it opened in the first saloon until Overton Newton was beaten into insensibility in the second saloon, and all the facts and circumstances occurring in the transaction, or as part of it, or leading up to it, were properly admitted in evidence."

The evidence here was admissible on the question of animus of the defendant and to explain the facts and circumstances occurring in the transaction.

In its oral charge the court instructed the jury:

"Now, in addition to that plea of not guilty, the Defendant sets up a plea of justification in this case on the grounds of self-defense. He says that he did what he did in this case because he was being assaulted by Keller. So you will want to know when a man may be justified in repelling an assault being made upon him on the theory of justification by reason of self-defense. First, he must be wholly free of fault in bringing on the difficulty with the party whose assault he is resisting. He must not have said anything or done anything to have brought on the difficulty, because the law says he cannot provoke the difficulty and then justify it on the theory of self-defense. In this

case the Defendant must have made a lawful arrest of Keller in order to invoke the defense of justification and self-defense. Then in addition to that, if he was free from fault in bringing on the difficulty, he must also have been in either actual or apparent danger of losing his life or of receiving great bodily harm at the hands of the person he claims was assaulting him. He must have been in either actual danger or apparent danger of losing his life or of receiving great bodily harm. While he might not have been in actual danger, he could have been in apparent danger. But in order to be justified because of apparent danger of losing his life or of receiving great bodily harm, it must have appeared that the Defendant and the party that he claims was assaulting him were so situated or so circumstanced or in such position that a reasonable man would have believed that he was in danger of losing his life or of receiving great bodily harm at the time, and the Defendant must have at the time entertained the belief that he was in actual danger."

The defendant reserved an exception to this portion of the charge.

■ Some of the defendant's refused charges sought to interpose the doctrine of self defense, however, as was said in Birt v. State, 156 Ala. 29, 46 So. 858:

"The doctrine of self-defense has no application to such cases, because it is the duty of the officer to effect the arrest or imprisonment of the offender, without the use of unnecessary or improper violence. * * * * This duty could not be performed if any element of self-defense was essential to the protection of the officer. He must, to do his duty, become the aggressor, and in no event is he required to retreat before an assailing prisoner."

See also Ex parte Warsham, 203 Ala. 534, 84 So. 889; Dyson v. State, 28 Ala.App. 549, 189 So. 784. The charge was erroneous and requires a reversal of this cause.

The defendant reserved an exception to this statement in charge to the jury:

"The law further says that the most insulting words are not provocation enough to legally justify a physical attack on another."

The exception recites:

"It being the position of the Defendant that opprobrious words may be shown both in justification and in extenuation of an assault and battery."

The argument in brief is that Title 14, § 37 of the Code of Alabama, 1940, provides that on the trial of any person for assault and battery he may give in evidence any opprobrious words or abusive language used by the person assaulted or beaten at or near the time of the assault and such evidence shall be good in extenuation or justification as the jury may determine.

The court gave to the jury defendant's charge 8 in the terms of § 37 of Title 14, but the defendant insists the giving of this charge did not correct the defect in the oral charge. Wright v. State, 269 Ala. 131, 111 So.2d 596.

■ We have not found a case in point in this jurisdiction, but we feel that the correct rule is set out in Burns v. State, 80 Ga. 544, 7 S.E. 88, where the court said:

"Another ground is that the court was requested to charge, in terms of section 4694 of the Code, that the use of opprobrious words or abusive language by the negro to the policeman might amount to a justification, or might not, according to the nature and extent of the battery. The court declined to give this charge, on the ground, as it appears, that the section was not applicable as between a prisoner and a policeman; and we think that is a correct construction. We think that an officer to keep the peace cannot suffer himself to be overcome by opprobrious words or abusive language while he is acting as a minister of the law, armed with legal power, and exerting it over a

prisoner; he cannot chastise his prisoner for insolence; he cannot yield to his passions, and take the administration of punishment, as it were, into his own hands. This section of the Code was made to apply between man and man, and not between officer and prisoner."

 While the court's instruction may have been incomplete because not limited to an assault by an arresting officer, it was not harmful to defendant.

We pretermit consideration of other matters argued in brief. They will probably not arise in the event of another trial.

Reversed and remanded.

CATES, ALMON and TYSON, JJ., concur.