FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 12, 2020

*Conzález, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 12, 2024

SARAH R. PENDLETON
ACTING SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 102402-9 |
| Petitioner, | |
| v. | EN BANC |
| NATHAN SCOTT SMITH, | |
| Respondent. | Filed: September 12, 2024 |

STEPHENS, J.— Every person accused of a crime has the right to be tried by an impartial jury. U.S. CONST. amend. VI.; WASH CONST. art. 1, § 22. To safeguard this right, judges must remove jurors for cause when the jurors cannot fairly decide a case, either on a party's motion to strike the juror or on the court's own motion in clear cases of bias. RCW 2.36.110; RCW 4.44.170; CrR 6.4(c)(1); *State v. Davis*, 175 Wn.2d 287, 290 P.3d 43 (2012), *abrogated in part by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018) (plurality opinion). Removal of a potential juror for actual bias requires proof, based on the juror's words, actions, or any other facts that (1) the juror exhibits actual bias against a substantial right of either party and (2) the juror cannot put aside this bias and try the case impartially. *State v. Sassen Van*

*Elsloo*, 191 Wn.2d 798, 425 P.3d 807 (2018). Equivocal statements suggesting a possibility of bias do not, on their own, provide sufficient grounds to remove a potential juror for cause. Generally, the trial judge is best positioned to evaluate the ability of a potential juror to serve, as they can observe the juror's demeanor and tone, gauging the subtler tells of bias that may not be captured in the transcripts. Appellate courts afford great deference to the trial court's decision of whether to remove a challenged juror and will not reverse absent a clear abuse of discretion.

At his trial in this case, Nathan Scott Smith sought to remove a prospective juror who said she might be inclined to agree with other jurors if she was "on the fence" as to the verdict, admitting she was "not a confrontational person." 2 Verbatim Report of Proceedings (VRP) at 251. The trial judge denied Smith's for-cause challenge, and the juror sat on Smith's jury, which returned a unanimous guilty verdict. The Court of Appeals reversed, finding that the juror exhibited actual bias and was unfit to serve. The State sought our review, and Smith conditionally sought review on additional grounds. We granted review solely as to this issue: whether, on the strength of the juror's statements alone, the juror so clearly demonstrated a likelihood of actual bias that no reasonable judge could have found her capable of following the law and trying the case impartially. We now reverse the Court of Appeals and reinstate Smith's conviction, concluding the trial court acted within its sound discretion in denying Smith's challenge for cause.

BACKGROUND AND PROCEDURAL HISTORY

Nathan Scott Smith was charged with one count of first degree rape of a child. During voir dire, Smith moved to strike three potential jurors for cause: venirepersons 6, 10, and 27. The court denied all three motions. Defense counsel exercised peremptory challenges to excuse venirepersons 6 and 10, as well as others, and he exhausted his allotted peremptory challenges without striking venireperson 27 (VP 27). VP 27 sat on the jury, which unanimously convicted Smith as charged. Smith appealed, arguing that VP 27 exhibited actual bias and that her participation on the jury mandates a new trial.

At issue are statements VP 27 made during individual voir dire, which Smith claims reveal her inability to honor the presumption of innocence and hold the State to its burden of proof.[1] VP 27 indicated in her questionnaire that serving on the jury might pose a hardship for her. When asked to elaborate, she explained that she worked in a small bakery and jury service would likely deplete her vacation time and disrupt plans for future vacations, as well as put a burden on coworkers who

---

[1] VP 27 made some additional statements during subsequent group voir dire, but these statements came after the trial court had denied Smith's for-cause challenge, and Smith did not renew his objection to VP 27 following the later statements. Though Smith now highlights the later statements in his appellate briefing and the Court of Appeals appears to have considered them as indicating bias, they could not have informed the challenged decision before us. Our focus is necessarily on the facts before the trial court at the time of the ruling on Smith's challenge to VP 27, as we assess the reasonableness of an exercise of discretion based on the totality of then-existing facts.

would be forced to cover for her. Defense counsel asked if she would be distracted by this situation, and VP 27 replied, "Probably not, although I will probably work all weekend, but I don't know." VRP at 248. Defense counsel posed a hypothetical:

> Q. … [S]o if you were told . . . that the verdict has to be unanimous, and let's say you are the only person who disagrees with the rest of the group, everybody else is going guilty or not guilty, would you be tempted in order to finish deliberations so you could get back to work to change your vote to whatever the rest of the group thinks, even if you personally didn't feel that way?
> A. If I was a 100 percent very confident, then no. But if I was, like, I believe this evidence, or whatever, but I am kind of, like, on the fence, then I may agree with everyone.
> Q. Okay. Is that just something that you would do no matter what, or would that be related to you trying to get back to work?
> A. Probably both or—yeah. I mean, I am not a confrontational person. I don't think I would, like, fight really hard if I, like, was on the fence about it.

*Id.* at 251.

Later that day in ruling on challenges, the judge informed counsel she did not think there was a basis to exclude VP 27, either for hardship or for cause. Defense counsel protested:

> [DEFENSE]: … [I]f she is willing to just go along with the group of guilty when she doesn't really think the case is going to be beyond a reasonable doubt was my determination of what she said, just because she is not a confrontational person, I think that is a basis to excuse for cause.
> THE COURT: I hear you, Mr. Wagner, but she is an individual who has not yet heard any evidence. She made it clear if she felt strongly about the evidence, I think the word she used [was] 100 percent. There are many people who enter jury service without experience that is, you know, necessarily relevant that this sort of

4

significant responsibility that we place[] upon members of our community, and when a juror says candidly I am not a confrontational person, I could see myself in a situation where I might not be the leader of the jury, but I might go along with other people.

I think that is relevant. I think it is pertinent for attorneys to ask questions about that, but if the qualification to serve as a juror was characterized as one where every person must commit to never change their mind, never compromise about an initial viewpoint they have on evidence based upon further reflection of what you have, that would place burden upon the jury selection process that the law does not recognize. People can change their minds for many reasons. Some of them may not be good reasons, but some of them may be, and a juror who has responded as she has is not in this Court's estimation anything that would warrant excusing her for cause.

[DEFENSE]: Your Honor, what I heard her [say] is . . . she would change her vote to go along with the group when her mind was not changed.

THE COURT: Mr. Wagner, we both heard what she had to say. You have made your motion. I have denied it.

*Id.* at 330-31.

VP 27 was seated as Juror 11, and following trial, the jury returned a guilty verdict. Defense counsel asked to have the jury polled, and the court obliged. All 12 jurors said the verdict reflected their individual assessment of the case and that it was the unanimous verdict of the jury. Smith appealed, challenging the court's denial of his motions to strike venirepersons 6, 10, and 27 for cause; the court's decision to give the jury a "Petrich instruction";[2] the propriety of the "to convict" instruction; the court's competency determination vis-à-vis a child witness; and the court's admission of hearsay statements by that child witness. In a divided opinion,

---

[2] *State v. Petrich*, 101 Wn.2d 566, 683 P.2d 173 (1984).

the Court of Appeals held the trial court had abused its discretion by failing to remove VP 27/juror 11, and reversed on that basis alone, rejecting Smith's other claims of error. *State v. Smith*, 27 Wn. App. 2d 838, 534 P.3d 402 (2023). The State filed a petition for review and Smith conditionally sought review of other issues. We granted review solely of State's petition.

## ANALYSIS

"Actual bias" is defined as "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). Unlike "implied bias," which is "conclusively presumed from the facts shown," removal of a potential juror for actual bias requires affirmative proof. *State v. Noltie*, 116 Wn.2d 831, 838, 809 P.2d 190 (1991).[3] We afford great deference to the trial court's assessments concerning bias, and the grant or denial of a challenge for cause will be reversed only for manifest abuse of discretion. *Id.* at 839.

---

[3] "Implied bias" within the meaning of the jury statutes arises when a juror has a close relationship with either party or an interest in the case. RCW 4.44.180 (implied bias defined). Whether such a relationship or interest exists is a question of preliminary fact. *Ottis v. Stevenson-Carson Sch. Dist., No. 303*, 61 Wn. App. 747, 757, 812 P.2d 133 (1991). Implied bias is not at issue here.

The parties recognize our leading case in this area is *Noltie*. There, we said trial judges are "in the best position to determine a juror's ability to be fair and impartial . . . [because they] can observe the demeanor of the juror and evaluate and interpret the responses." *Id*. "'The supreme court, which has not had the benefit of this [firsthand observation] recognizes the advantageous position of the trial court and gives it weight in considering any appeal from its decision. Unless it very clearly appears to be erroneous, or an abuse of discretion, the trial court's decision on the fitness of the juror will be sustained.'" *Id.* (quoting 14 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: TRIAL PRACTICE CIVIL § 203, at 332 (4th ed. 1986)). Applying this standard, we deferred to the trial court's decision to not strike a juror who had indicated potential bias in favor of the State. Specifically, the potential juror admitted she might be influenced by the emotional aspects of a child's testimony in a rape case and might give greater weight to the child's testimony than other evidence. And when asked whether she would want someone like herself on the jury, she said, "No, I don't think so . . . I don't know. I don't know. It is just, I guess children, I don't know." *Id.* at 836 (alteration in original) (internal quotation marks omitted). To clarify, the judge had asked, "[Y]ou can't say positively that you are not going to be fair and you can't say that in all probability you won't be fair, it's just that you have the fear that you would not be?" and the juror agreed. *Id.* at 837 (internal quotation marks omitted). The judge then denied defense counsel's

motion to excuse the juror for cause, and, noting that the judge was best positioned to judge "whether the juror's answers merely reflected honest caution . . . or whether they manifested a likelihood of actual bias," we affirmed. *Id.* at 840; *see also State v. Peña Salvador*, 17 Wn. App. 2d 769, 774, 487 P.3d 923 (2021) (finding no actual bias where defense counsel asked a juror, "[A]re you telling me that you think that you would be biased against my client?" and the juror responded, "I'm afraid I *might* be … and I'm just being honest with you." (emphasis added) (alterations in original) (internal quotation marks omitted)), *overruled on other grounds by State v. Talbott*, 200 Wn.2d 731, 521 P.3d 948 (2022).

Consistent with this standard, appellate courts recognize that unequivocal statements indicating bias, without a subsequent assurance of impartiality, can establish actual bias because "no nuance of inflection or demeanor can overwhelm the explicit meaning of [an unequivocal statement of partiality]." *State v. Booth*, 24 Wn. App. 2d 586, 600, 521 P.3d 196 (2022). For example, in *State v. Gonzalez*, defense counsel asked a juror whether, if it came down to the defendant's word versus that of a police officer, she would believe the officer, and she said, "Yes, I would." 111 Wn. App. 276, 279, 45 P.3d 205 (2002), (internal quotation marks omitted), *overruled on other grounds by Talbott*, 200 Wn.2d 731. The Court of Appeals held the trial court abused its discretion by not excusing the juror because she expressed actual bias that had not been rehabilitated—indeed, no effort had been

8

made to rehabilitate her—after unequivocally expressing bias. Similarly, in *State v. Irby*, the juror was asked if she could be fair to the defendant, and she responded, "I would like to say he's guilty," and never offered any reassurance of her ability to be impartial. 187 Wn. App. 183, 190, 347 P.3d 1103 (2015) (internal quotation marks omitted). And in *State v. Guevara Diaz*, a juror simply wrote "no" on her questionnaire when asked "Can you be fair to both sides in a case involving allegations of sexual assault or sexual abuse?" 11 Wn. App. 2d 843, 858, 456 P.3d 869 (2020) (internal quotation marks omitted). The juror apparently joined her peers in nodding and saying "yes" in response to the prosecutor's general questions during voir dire about their ability to be fair, but the Court of Appeals found this insufficient to rehabilitate the juror in light of her earlier unequivocal statement of actual bias. *Id.*; *see also State v. Fire*, 100 Wn. App. 722, 724, 998 P.2d 362 (2000) (reversing denial of a motion to excuse a juror who said he "'consider[ed] [the defendant] a baby raper, and [thought that he] should just be severely punished,'" and when the prosecutor attempted rehabilitation, gave only one-word answers (quoting court record)), *reversed on other grounds*, 145 Wn.2d 152, 155, 34 P.3d 1218 (2001).

Our decision in *Noltie* recognized that a juror's equivocations during voir dire, when combined with objective factors, may support a finding of actual bias. *See Noltie*, 116 Wn.2d at 838 (distinguishing *City of Cheney v. Grunewald*, 55 Wn. App. 807, 780 P.2d 1332 (1989)). In *Grunewald*, the defendant was arrested and charged

9

with driving while intoxicated. One juror disclosed his membership with the organization Mothers Against Drunk Driving, which he had joined after his niece was killed by a drunk driver several years earlier. The Court of Appeals said neither of these facts, standing alone, established proof of implicit or actual bias against the defendant. Still, these circumstances "coupled with [his] answer that he would not want six jurors with his frame of mind on the jury . . . and that he would not receive a fair trial with six such jurors" convinced the court that the juror should have been excused for actual bias. *Grunewald*, 55 Wn. App. at 811. In *Noltie*, we distinguished the facts of *Grunewald*, explaining that the *Noltie* juror's general discomfort with the subject matter of that case was not equivalent to the situation in *Grunewald*, because there "one of the juror's family members had actually been a victim of the same type of crime as that on which he was being asked to sit in judgment." 116 Wn.2d at 838.

What emerges in the fact-specific analysis of our cases is an approach that requires trial judges to carefully assess the juror's statements, and any additional information revealed in juror questionnaires or during voir dire, in order to determine whether the juror is actually biased and therefore unfit to serve. Given the nuanced nature of this exercise, which relies heavily on the trial judge's assessment of the juror's responses, demeanor, and tone in context, appellate review is appropriately restrained. We will not disturb the trial court's decision absent a clear abuse of

discretion, i.e., where no reasonable judge would have made the same decision. *Id*. at 839-40.

Applying this deferential test, we consider VP 27's statements: that she would not change her vote if she was "100 percent very confident," but might do so if she was "on the fence." 2 VRP at 251. A juror who would vote to convict under such circumstances, Smith argues, is clearly unfit to serve. The Court of Appeals majority agreed with Smith, concluding VP 27's statements directly implicated the State's burden to prove its case beyond a reasonable doubt because if a juror is "on the fence," the State has necessarily failed to satisfy this burden. *Smith*, 27 Wn. App. 2d at 847. The majority considered VP 27's response to be a "clear statement that [she] either did not understand her obligations under the law or was unable to follow them, possibly both," explaining that while she prefaced the statement with a "may," she contrasted the likelihood of her upholding her honest beliefs—if she was 100 percent confident in them—with the apparently slim probability of fulfilling her duty *not* to change her mind for the sole purpose of reaching a verdict. *Id.* at 847, 850. The Court of Appeals panel concluded that her answer indicated a probability of her switching her vote in the interest of expediency, not just a mere possibility, "particularly when framed through the lens of her initial reluctance to serve due to work and financial concerns." *Id.* at 852.

Judge Feldman dissented, observing that VP 27's statements were "significantly more equivocal" than those in *Noltie* and *Peña Salvador*. *Id.* at 855 (Feldman, J., dissenting). Although she admitted she was "not a confrontational person" and that if she was on the fence, she *may* agree with everyone and she did not *think* she would fight really hard, Judge Feldman emphasized she had "not [said] that she definitely or probably would agree with everyone." *Id.* The dissent found VP 27's statements to be consistent with Washington's pattern jury instructions, which exhort jurors "'to re-examine [their] own views and to change [their] opinion based upon further review of the evidence,'" but not to "'surrender [their] honest belief about the value or significance of evidence solely because of the opinions of [their] fellow jurors . . . [or] for the purpose of reaching a verdict.'" *Id.* at 855-56 (quoting 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 1.04, at 32 (5th ed. 2021)). Judge Feldman found in VP 27's statement an ability to balance these dual commands: she would not surrender her honest belief if she was 100 percent certain, but when uncertain, she would be "willing to reexamine her opinion based on further review of the evidence in deliberations with her fellow jurors." *Id.* at 856. As did the trial court, Judge Feldman concluded VP 27's statements did not convey unequivocal bias.

Building on Judge Feldman's dissent, the State emphasizes that VP 27's statements fall short of an expression of actual bias that requires removal of a juror

12

under our precedent. The State criticizes the majority's analysis as drifting away from the *Noltie* standard toward what it sees as a contrary standard articulated by the Ninth Circuit Court of Appeals in *United States v. Gonzalez*, 214 F.3d 1109 (9th Cir. 2000), and *United States v. Kechedzian*, 902 F.3d 1023 (9th Cir. 2018). Suppl. Br. of Pet'r at 30-31. The State characterizes the Ninth Circuit rule as requiring the absolute rehabilitation of jurors who equivocate about their ability to follow a certain instruction or refrain from certain biases, even if they had not previously expressed an inclination toward bias in their decision-making. *See id.* at 28. In the State's reading of these cases, they require a clear statement of nonbias following any equivocal statement of bias—in contrast to our standard in *Noltie*, which requires rehabilitation only after unequivocal statements of bias. *Id.* The State reads the Court of Appeals majority as following this different rule based on its description of VP 27's "'*inability to commit*' to applying the presumption of innocence," suggesting the majority was actually applying the *Gonzalez/Kechedzian* test, not *Noltie*. *Id.* (quoting *Smith*, 27 Wn. App. 2d at 848). As further evidence of this claim, the State points to a passage in Division One's earlier decision in *State v. Talbott* where the court said, "*Noltie* was decided decades prior to . . . *Gonzalez* and therefore does not reflect the nuance that has developed in the case law over time." No. 80334-4-I, at 11 (Wash. Ct. App. Dec. 6, 2021) (unpublished) [https://perma.cc/Z9FX-7FMN], *rev'd on other grounds*, 200 Wn.2d 731, 521 P.3d 948 (2022). The State argues

this "gives indication that the appellate court believes the *Kechedzian/Gonzalez* standard has supplanted the *Noltie* standard in Washington, or at least that the *Noltie* standard has been effectively modified *into* [that] standard." Suppl. Br. of Pet'r at 29-30. In contrast, Smith reads the Court of Appeals' opinion as a straightforward application of our own precedent. We take this opportunity to clarify our standard and refocus the proper analysis.

While the Court of Appeals does invoke *Noltie*, the majority analysis focuses on VP 27's apparent "[inability] to commit" to being impartial—which is relevant to rehabilitation of a biased juror—without first establishing sufficient basis in the record of an unequivocal expression of actual bias. *Smith*, 27 Wn. App. 2d at 847-48. On the other hand, we decline the State's invitation to distinguish our test in *Noltie* from the one applied in *Gonzalez* and *Kechedzian*. Instead, we read these cases as consistent with *Noltie*, recognizing that even an equivocal statement *may* establish actual bias where additional objective factors—such as the juror's own experience with identical or substantially similar crimes—together with equivocal answers to follow-up questions touching on these potential sources of implicit bias cumulatively establish a probability of actual bias. *See Noltie*, 116 Wn.2d at 838-39 (distinguishing *Grunewald*, 55 Wn. App. 807).[4] But the facts in this case do not

---

[4] In both *Gonzalez* and *Kechedzian*, the challenged jurors revealed they had personal experiences with the kinds of criminal conduct they were being asked to review as jurors. These jurors' histories, combined with repeated equivocations as to whether they could set

implicate this approach, as Smith's for-cause challenge to VP 27 was based, not on the cumulative effect of multiple factors, but on her voir dire statements alone. Thus, the only question is whether VP 27's statements, indicating she might go along with other jurors if she was on the fence and that she was not a confrontational person, revealed actual bias disqualifying her from serving on the jury.

Smith argues VP 27's statements clearly "reflected submissiveness to the extent of not being able to apply the law." Suppl. Br. of Resp't at 19. Smith claims VP 27's statements showed unequivocal bias because "[b]iased statements do not become equivocal when jurors preface them with 'I don't know if I could.'" *Id.* at 21. Here, Smith relies on *Gonzalez*, 111 Wn. App. 276, but his reliance is misplaced. The challenged juror in *Gonzalez* unequivocally said, "Yes, I would," when asked if she would presume a police officer's testimony to be more reliable than that of a defendant. *Id.* at 279 (internal quotation marks omitted). Defense counsel probed further, asking, "What if the Court instructed you that it's actually the opposite, that you're supposed to presume that the defendant is innocent unless and until the State . . . can prove to you otherwise?", and the juror responded, "I don't know if I could." *Id.* (internal quotation marks omitted). The court held this equivocal statement was

---

aside their own experiences and try the case impartially, led the Ninth Circuit to conclude the jurors expressed actual bias and should have been excused. This is substantially the same analysis employed by our Court of Appeals in *Grunewald*, consistent with the *Noltie* standard.

insufficient to rehabilitate her earlier admission of bias: plainly, the court believed "I don't know" made the juror's answer equivocal, contrary to Smith's argument. *See id.* at 282.

Ascertaining the intended meaning of a juror's statements is not an exact science, and a trial judge reasonably considers tone, demeanor, and the broader context of the juror's remarks. Here, on balance, it is fair to read VP 27's statements during individual voir dire as more equivocal than those at issue in the cases Smith relies on. While VP 27 said that she "may" go along with others if she were "on the fence," she also confirmed that she would consider the evidence and follow the court's instructions. Her statements were at least as equivocal as the statements at issue in *Noltie*, where the juror said she "might" have difficulty being fair. 116 Wn.2d at 836; *see also Peña Salvador*, 17 Wn. App. 2d at 774 (holding it was not an abuse of discretion to seat a juror who had said he was "'afraid [he] might be [biased against the defendant]'" (quoting court record)). Considering VP 27's statements in their full context and given the deferential standard of review, we conclude that the trial judge acted reasonably within her discretion by declining to remove VP 27 based on these statements.

CONCLUSION

We hold that it was not an abuse of discretion for the trial court to deny Smith's for-cause challenge to VP 27 based on her statements during individual questioning. The juror, a layperson, made statements that cast some doubt on her ability to hold the State to its burden of proof, but these statements were equivocal. As we held in *Noltie*, equivocations suggesting a mere possibility of bias are not, on their own, sufficient to demonstrate a probability of actual bias. As such, it was properly within the judge's discretion—having considered the juror's demeanor, affect, and sincerity—to conclude VP 27's answers reflected honest caution rather than actual bias. Accordingly, we reverse the Court of Appeals and reinstate Smith's conviction.

Stephens, J.

WE CONCUR:

Gonzáles, C.J.

Gordon McCloud, J.

Johnson, J.

Yu, J.

Madsen, J.

Montoya-Lewis, J.

Owens, J.

Whitener, J.