IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 86724-5-I |
| Respondent, | |
| v. | DIVISION ONE |
| DAVID DARRELL SYKES, | UNPUBLISHED OPINION |
| Appellant. | |

CHUNG, J. — David Sykes challenges his conviction for assault in the first degree with a deadly weapon enhancement on several grounds. First, he asserts the State committed prosecutorial misconduct when it discussed the "stand your ground" principle in closing argument, and that his counsel's failure to object to the State's comments constituted ineffective assistance. Further, in his statement of additional grounds for review (SAG), he contends that he was denied his right to a fair and impartial jury, and that he received ineffective assistance when his counsel failed to strike a biased juror. Lastly, he asserts that he was denied a fair trial because he was not present when the jury was empaneled. Finding no error, we affirm the conviction.

FACTS

On March 26, 2021, Sykes was riding the southbound Metro A-Line bus (bus) on Pacific Highway. During the ride, Richard Moore boarded the bus as well. Three minutes after Moore boarded the bus, Sykes pulled out a knife and stabbed Moore in the chest.

At trial, two videos capturing the event were shown to the jury. The first video was a five-minute compilation of footage from the fixed cameras inside and around the bus. This compilation shows Moore boarding the front of the bus and passing Sykes on his way to the back of the bus. Moore stops near the back of the bus and remains standing. Sykes is shown near the middle of the bus, sitting on a bench seat that faces inward. The video shows Sykes looking at his cellphone while continually glancing up and around the bus. After standing for approximately a minute, Moore looked around and then walked towards the middle of the bus, taking a seat across from Sykes. After about another minute, the men began speaking, raised voices can be heard, and both men stand to face one another. Sykes is seen moving towards Moore. The interaction concludes with Sykes stabbing Moore. After the stabbing occurs, Moore stumbles to the front of the bus and exclaims that he had been stabbed by Sykes. Sykes is seen exiting the bus from the back.

The second video was recorded by a passenger seated near the front of the bus. The video begins after the two men stood up to face one another. In this video, Moore, in a black jacket, can be seen standing with his back to the camera and walking backwards as Sykes, a larger man in grey sweatpants, approached and swung at Moore.

During this altercation, Emily Thomson was seated in the middle of the bus across from Sykes.[1] Moore was not initially near her or Sykes, but ended up sitting next

---

[1] Thomson identified herself in the videos wearing a long puffy parka, pale in color, with a dark backpack in her lap and headphones over her ears. Thomson explained that although she was wearing headphones, there was no audio input, as her phone's battery was low.

to Thomson, on her left. Thomson testified that shortly after Moore sat next to her, it appeared as if words were spoken between the men, but she could not initially determine who spoke to the other first. At one point, she heard Sykes say, "[g]et away from me, man. Don't play with me, man. I will F you up, man."[2] Thomson noted that after the verbal interaction, both men stood up and moved towards the front of the bus. Thomson testified that she felt as if something was about to happen, given the prior exchange and the "defensive stance" Moore took, standing with one of his hands "up closer to his face and one hand down, appearing ready to fight." Then a physical altercation occurred for "about 30 seconds." Thomson testified that the men appeared to be punching toward each other's torsos. According to Thomson, the fight ended when Moore hunched over and exclaimed "I've been stabbed in the chest. I've been stabbed." Sykes then walked towards the back of the bus and exited at the next stop. After two more stops, the bus stopped and several passengers began administering aid to Moore until police and medical assistance could arrive.

Daniel Ruiz, a deputy with the King County Sheriff's Office, was on duty nearby and responded to the incident. While driving southbound on Pacific Highway, Ruiz found Sykes walking northbound and stopped his vehicle nearby. Sykes approached Ruiz and yelled, "Yeah, I did it." Sykes continued to explain that he "did it" because he had been robbed the previous week. Ruiz then arrested Sykes and found a knife on his person.

---

[2] During trial, Thomson clarified that Sykes used the "F-word" but she censored it for the court.

Benjamin Emmons, a detective with the King County Sheriff's Office, arrived at the scene of Sykes's arrest shortly after he was placed in handcuffs. According to Emmons, Sykes said that "a man [who] had robbed him a couple days ago in Seattle, had gotten onboard the bus and sat next to him." Sykes reported that Moore said "[w]hat are you going to do about it?" and Sykes responded by pulling out his knife and stabbed Moore in "self-defense." Upon a search of his person, Sykes was found to have a business card from the Seattle Police Department that contained the robbery incident number.

Meanwhile, Moore was transported to Harborview Medical Center where he underwent emergency surgery to repair the penetrating chest wound that lacerated his pericardium,[3] his heart, and severed an artery. Moore was in the hospital for a week. Moore did not testify at trial.

The State charged Sykes with assault in the first degree and sought a deadly weapon enhancement because Sykes was armed with a knife. Sykes has had four trials related to this charge. The first two trials ended with a deadlocked jury and resulted in a mistrial. At the third trial, a jury found Sykes guilty as charged, but this court reversed his conviction on appeal based on ineffective assistance of counsel (IAC).[4]

This appeal follows Sykes's conviction at his fourth trial, which began in May 2024. At trial, Sykes's theory was self-defense. To prove this, Sykes introduced testimony from the two Seattle police officers who had interviewed him about the

---

[3] The pericardium is a "dense fibrous sac" that encloses the heart.
[4] State v. Sykes, No. 84027-4-I (Wash. Ct. App. Aug. 21, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/840274.pdf.

robbery on March 23, three days before the altercation with Moore. Sykes reported to the officers that two men, one with dark skin and one with lighter skin, approached him and tried to rob him. One of them threatened him with a knife, although Sykes did not see the knife. After reporting the attempted robbery, Sykes went to Harborview and described experiencing "left eye pain, blurred vision, and a left-sided headache." The jury was also shown footage from the officers' body-worn cameras of the interview with Sykes immediately after the incident, wherein Sykes provided his account of the attempted robbery and assault.

The court provided the jury with instructions on self-defense, to which neither party objected. The jury found Sykes guilty as charged. The court sentenced Sykes to the highest sentence within the standard range, 318 months of incarceration for the base offense, in addition to 24 months for a deadly weapon enhancement. Sykes timely appeals.

DISCUSSION

Sykes contends that the State committed reversible misconduct when it suggested in closing argument and in rebuttal that a "reasonably effective alternative" could include Sykes running away from the confrontation and that his counsel was ineffective because he failed to object to these statements. He also claims in a SAG that his counsel provided ineffective assistance because he did not move to strike a biased juror, and that he was denied a fair trial because he was not present when the jury was empaneled.

I. Prosecutorial Misconduct

Sykes argues that he was denied his constitutional right to a fair trial because the State committed flagrant and prejudicial misconduct—specifically, in closing argument and rebuttal, when it misstated the law of self-defense. While the State acknowledges that "two brief statements made during the State's closing argument did misstate that 'stand your ground' principle, it was not prejudicial when viewed in context of all the evidence and argument[,] since there was no evidence to support Syke's self-defense claim."

We generally review allegations of prosecutorial misconduct under an abuse of discretion standard. State v. Lindsay, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). The defendant bears the burden of showing the comments were improper and prejudicial. Id. "If the defendant did not object at trial, the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).

"A prosecutor's argument to the jury must be confined to the law stated in the trial court's instructions." State v. Walker, 164 Wn. App. 724, 736, 265 P.3d 191 (2011). "When the prosecutor mischaracterizes the law and there is substantial likelihood that the misstatement affected the jury verdict, the defendant is denied a fair trial." Id. "A prosecutor's misstatement of the law is a serious irregularity having the grave potential to mislead the jury." Id.

Sykes did not object to the self-defense jury instructions at trial, nor does he contest their accuracy on appeal. At trial, when a defendant raises a self-defense claim, " 'the prosecution bears the burden of proving beyond a reasonable doubt the absence of self-defense.' " State v. Meza, 26 Wn. App. 2d 604, 620, 529 P.3d 398 (2023) (quoting State v. McCullum, 98 Wn.2d 484, 493, 656 P.2d 1064 (1983) (plurality opinion)).[5] "To prove self-defense, there must be evidence that," among other things, "the defendant exercised no greater force than was reasonably necessary." State v. Callahan, 87 Wn. App. 925, 929, 943 P.2d 676 (1997); see also WPIC 17.02.[6] RCW 9A.16.010(1) defines "necessary" to mean "that no reasonably effective alternative to the use of force appeared to exist and that the amount of force used was reasonable to effect the lawful purpose intended."[7] However, it is also "well settled that there is no duty to retreat when a person is assaulted in a place where he or she has a right to be." State v. Redmond, 150 Wn.2d 489, 493, 78 P.3d 1001 (2003). To ensure that jurors do not "engage in their own assessment of the defendant's opportunity to retreat," "where the possibility of such speculation exists" because objective facts

---

[5] Jury instruction no. 13 explained that it is a defense to the charge of assault in the first degree that the force used was lawful, and that the State had the burden to prove beyond a reasonable doubt that Sykes's use of force against Moore was not lawful.

[6] Jury instruction no. 13 further elaborated, "The use of force or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary."

[7] Jury instruction no. 14, based on WPIC 16.05, stated, "Necessary means that, under the circumstances as they reasonably appeared to the actor at the time, (1) no reasonably effective alternative to the use of force appeared to exist and (2) the amount of force used was reasonable to effect the lawful purpose intended."

suggest that retreat would have been a reasonable alternative, a "no duty to retreat" instruction is warranted. Id. at 494-95.[8]

Here, although the State properly identified that it carried the burden to disprove Sykes's self-defense claim, it concedes it misstated the law regarding a duty to retreat. At the beginning of its closing argument, the State argued that Sykes was not acting in self-defense, but rather, in retaliation. After reviewing the elements of assault in the first degree, the State pivoted to discussing self-defense and its burden in proving beyond a reasonable doubt that the force used by Sykes was not lawful. The State further explained that for self-defense, the force needed to be proportionate, and argued that Sykes was "not justified in using any force at all," and that "he certainly wasn't justified in the amount of force that he used," since Sykes appeared on the bus video to raise his voice, pull out a knife, and advance on an apparently unarmed Moore.

In the statements that Sykes challenges, the State then argued that as the video portrayed the interaction, there were reasonable alternatives to force, such as moving seats, getting off the bus, asking other passengers for help, using the cellphone Sykes was carrying to call for help, or pulling out the knife and holding it defensively to warn Moore. And in rebuttal, the State reemphasized these other options: "Is there more than one way a reasonable person can act? Yes. Run away. Get off the bus. Pull out the knife defensively and say, 'Don't come any closer to me.' Lots of other ways."

---

[8] In this case, jury instruction no. 16 provided, "Notwithstanding the requirement that lawful force be "not more than is necessary," the law does not impose a duty to retreat. Retreat should not be considered by you as a "reasonably effective alternative."

As Sykes did not object to these statements at trial, he waived the error on appeal unless he can prove the misconduct was so flagrant and ill intentioned that no instruction could cure the prejudice and the prejudice had a "substantial likelihood of affecting the jury verdict." Emery, 174 Wn.2d at 760-61. "Reviewing courts should focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." Id. at 762. "Under this heightened standard, the defendant must show that (1) no curative instruction would have obviated any prejudicial effect on the jury and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict." Id. at 761 (internal quotation marks omitted).

While there was nothing objectionable about the State's argument that there were "reasonably effective alternatives," it was improper to suggest as an alternative that Sykes could have left the confrontation—for example, by getting off the bus. But even assuming the prosecutor's argument to this effect improperly suggested that Sykes had a duty to retreat, any error was harmless.

The court instructed the jury that Sykes had no duty to retreat. The purpose of providing such an instruction is to directly address the issue Sykes complains of, i.e., to prevent a juror from "erroneously conclud[ing] that the [defendant] used more force than was necessary because they did not use the obvious and reasonably effective alternative of retreat." State v. Williams, 81 Wn. App. 738, 744, 916 P.2d 445 (1996). Although Sykes did not object to the prosecutor's argument and, thus, the court did not contemporaneously strike the statements or instruct the jury to disregard them, the jury

9

did ultimately receive the relevant instruction that Sykes had no duty to retreat. The court also instructed the jury that it must "disregard any remark, statement, or argument that is not supported by . . . the law in [its] instructions." We presume the jury followed its instructions. State v. Montgomery, 163 Wn.2d 577, 595, 183 P.3d 267 (2008). Accordingly, Sykes fails to meet his burden of establishing that no instruction could cure the prejudice and the prejudice had a substantial likelihood of affecting the jury verdict.

II.  IAC Claim Regarding Claimed Prosecutorial Misconduct

Next, Sykes argues that he received ineffective assistance because his "counsel failed to object to the prosecutor's misleading, confusing arguments in closing and in rebuttal." We disagree.

For a successful IAC claim, a defendant must establish both objectively deficient performance and resulting prejudice. Emery, 174 Wn.2d at 754-55. To show deficient performance, the defendant must show that counsel's representation fell below an objective standard of reasonableness in light of all the circumstances. Strickland v. Washington, 466 U.S. 668, 688 (1984). "Courts engage in a strong presumption counsel's representation was effective." State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). To overcome this presumption, "the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." Id. at 336. Prejudice requires that "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 334-35. The court need not consider

No. 86724-5-I/11

both deficiency and prejudice if a petitioner fails to prove one. In re Pers. Restraint of Crace, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012). We review IAC claims de novo. State v. Estes, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017).

Here, for similar reasons as stated above, Sykes cannot show his counsel's failure to object to the challenged statements was deficient or so prejudicial that, except for the claimed errors, the result would have been different. "Counsel's decisions regarding whether and when to object fall firmly within the category of strategic or tactical decisions." State v. Johnston, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007). Instead of objecting, defense counsel explained the relevant legal principles regarding self-defense during closing argument and emphasized that Sykes was not under an obligation to run away. Sykes does not show that his counsel's choice not to object was not a reasonable strategic or tactical decision. Further, the court instructed the jury on self-defense and Sykes's right to stand his ground and lack of duty to retreat, as well as that it must disregard any argument not supported by the law in its instructions. As Sykes cannot establish either deficiency or prejudice, his IAC claim fails.

III. Statement of Additional Grounds for Review

Sykes raises additional issues in his SAG. He argues that he received an unfair trial when his counsel failed to strike a juror who was a "retired King County Metro bus driver" because the juror "would be partial to the State's evidence[] and not partial towards the defense's evidence." He also claims that counsel's failure to strike the purportedly biased juror constituted ineffective assistance of counsel. Finally, he

11

claims his due process rights were violated because he was not present when the jury was empaneled.

While juror 21 did confirm they were a retired Metro bus driver and had previously experienced an assault on their bus, Sykes's counsel did not move to excuse them for cause and did not exhaust his peremptory strikes. Sykes's claim that he was denied a fair and impartial jury is not appropriately before this court because he "accepted the jury as ultimately empaneled and did not exercise all of his peremptory challenges." State v. Clark, 143 Wn.2d 731, 762, 24 P.3d 1006 (2001) ("under well-settled case law," a defendant cannot show prejudice when they fail to exercise all their peremptory challenges).

Sykes further argues that his counsel provided ineffective assistance because he failed to strike juror 21. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution both guarantee a defendant the right to a trial by an impartial jury. U.S. CONST. amend. VI.; WASH. CONST. art. 1, § 22. "To safeguard this right, judges must remove jurors for cause when the jurors cannot fairly decide a case, either on a party's motion to strike the juror or on the court's own motion in clear cases of bias." State v. Smith, 3 Wn.3d 718, 720, 555 P.3d 850 (2024).

Actual bias is a basis for challenging a juror for cause. RCW 4.44.170. "Actual bias" is defined as "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights

of the party challenging." RCW 4.44.170(2). "Removal of a potential juror for actual bias requires proof, based on the juror's words, actions, or any other facts that (1) the juror exhibits actual bias against a substantial right of either party and (2) the juror cannot put aside this bias and try the case impartially." Smith, 3 Wn.3d at 720. " 'Implied bias' within the meaning of the jury statute arises when a juror has a close relationship with either party or an interest in the case." Id. at 724 n.3 (citing RCW 4.44.180).

Sykes does not clarify whether his claim is based on actual or implied bias. Regardless, his claim fails under both theories.

During voir dire, the court noted that juror 21 indicated on a form to the court that they "had concerns about [their] ability to be fair and impartial." The court and parties then spoke to juror 21 directly, asking if they could explain why they had concerns. Juror 21 responded that they did not recall the question, but that they had no concerns. They believed they could be fair and impartial, they could follow the court's instructions on the law, and they could apply the law to the evidence presented in the courtroom. Thus, juror 21's words did not indicate they harbored an actual bias against a substantial right of Sykes and unequivocally indicated they could be unbiased, impartial, and follow instructions.

As for implied bias, RCW 4.44.180 defines implied bias and states "the following causes, and not otherwise" may be the basis for implied bias: (1) a relationship to either party within the fourth degree of kinship, (2) any close business relationship, (3) a financial interest in the outcome of the suit, and (4) having served

on an earlier jury trying the case on substantially the same issues. Nothing in the record indicates that any of these causes were present for juror 21.

Sykes fails to overcome the presumption that his counsel was effective for failing to strike a juror for bias when there was no basis to do so. As Sykes must establish both deficiency and prejudice and cannot establish deficiency, his IAC claim on this basis fails.

Finally, Sykes argues that he was not present "in the courtroom" when juror 21 was accepted and "could not strike" the juror himself; therefore, he was denied a fair trial. Ordinarily, "[a] criminal defendant has a due process right to be present at all critical stages of his criminal trial." State v. Love, 176 Wn. App. 911, 920, 309 P.3d 1209 (2013). "This includes voir dire and empanelling stages of the trial." Id. at 920-21.

At the start of trial, it was noted in the record that Sykes was present with his attorney. Later that same day, Sykes's counsel questioned juror 21 directly concerning their employment. But the record does not reflect whether or not Sykes was present during the jury empaneling. The appellant has the burden of providing the record to support their claimed error. State v. Barry, 183 Wn.2d 297, 317, 352 P.3d 161 (2015). We may either " 'decline to address a claimed error when faced with a material omission in the record' " or "simply affirm the challenged decision if the incomplete record before us is sufficient to support the decision." State v. Sisouvanh, 175 Wn.2d 607, 619, 290 P.3d 942 (2012) (quoting State v. Wade, 138 Wn.2d 460, 465, 979 P.2d 850 (1999)). As the appellate record does not clearly reflect whether

Sykes was present during the jury empaneling, we decline to address his claimed error on this ground.

CONCLUSION

We affirm.

_Chung, J._

WE CONCUR:

_Feldman, J._

_____