IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 88290-2-I |
| IAN A. GANTT, | DIVISION ONE |
| Petitioner. | UNPUBLISHED OPINION |

COBURN, J. — A jury convicted Ian Gantt of multiple counts for sexually abusing his daughter.[1] The trial court mistakenly impaneled Juror 22 despite previously excusing that juror based on Gantt's peremptory challenge. Despite the court announcing that Juror 22 was impaneled, Gantt did not object and proceeded with trial. During trial defense counsel argued that if Gantt had sexually abused his daughter, he likely would have given her a sexually transmitted disease which she did not have. In this personal restraint petition (PRP), Gantt contends that his state constitutional right to an impartial jury was violated when Juror 22 deliberated on his case after having been peremptorily excused. He also claims his counsel was ineffective for failing to introduce expert testimony as to herpes transmission. The record does not support Gantt's assertion that

---

[1] State v. Gantt, 29 Wn. App. 2d 427, 434, 540 P.3d 845, review denied, 3 Wn.3d 1002, 549 P.3d 115 (2024) (affirming the convictions for two counts of incest in the first degree, one count of child molestation in the second degree, one count of rape of a child in the second degree, and one count of rape of a child in the third degree).

Juror 22 was biased. Gantt also fails to establish that counsel's decision to not call an expert was deficient and not strategic. Accordingly, we deny the petition.

PROCEDURAL HISTORY[2]

The trial court conducted voir dire over Zoom[3] in April 2022. A total of 116 jurors were divided into groups of three and were questioned remotely, appearing to defense counsel in thumbnail-size images on a computer screen. Defense counsel exercised a peremptory challenge to excuse Juror 22, which the court granted.[4] However, at the end of voir dire when the court named the impaneled jurors and their assigned jury seat number, the trial court said, "Seat number 5 is 22." Defense counsel did not object. As explained in his January 2025 declaration, counsel did not remember the court listing Juror 22 when it read the list of impaneled jurors but admitted that he did not give any response. Counsel asserted that the lack of response was not a tactical decision.

When the impaneled jurors appeared in person for trial, they, and everyone else in the courtroom, were required to wear masks that covered their mouth and nose. The seated jurors were renumbered based on their seat number. Thus, once trial began, there was never a reference to "Juror 22" and trial proceeded. Defense counsel, and apparently everyone else, did not recognize Juror 22.

---

[2] Gantt first raised this issue regarding Juror 22 in his direct appeal as part of his statement of additional grounds. Gantt, 29 Wn. App. 2d at 454. Because of the insufficient record, this court did not address the merits because it could not determine if Juror 22 was impaneled or if reference to Juror 22 was a clerical mistake or court misstatement. Id. at 454-55. After his direct appeal, Gantt obtained a declaration from his trial counsel and the State was able to confirm with Juror 22 directly that, in fact, he was impaneled.

[3] Zoom is a cloud-based videoconferencing software platform. State v. Wade, 28 Wn. App. 2d 100, 104 n.1, 534 P.3d 1221 (2023), review denied, 2 Wn.3d 1018, 542 P.3d 570 (2024).

[4] Defense counsel's declaration states both that Juror 22 was "successfully challenged for cause" and was excused as a peremptory challenge. The parties do not dispute and the record supports that Juror 22 was excused as a peremptory challenge and never challenged for cause.

FACTS

Gantt and his wife, Teresa Gantt, began living in separate residences when their daughter, K.G., was 11 years old. Gantt, 29 Wn. App. 2d at 433. Thereafter, Gantt plied K.G. with drugs and alcohol and sexually abused her from age 11 to 17 when she disclosed the abuse to a high school counselor. Id. The State charged Gantt with multiple counts of sexually abusing his daughter.

At trial, K.G. testified that the rapes started out a couple of days a week and then became daily unless others were around. Defense counsel, through cross examination of Teresa,[5] introduced the fact that she has herpes and that she takes medication Valtrex or valacyclovir.[6] Teresa clarified that the medication is for genital warts. She also testified that she shared that medication with Gantt. The defense also offered into evidence a portion of Gantt's prescription history where he was prescribed valacyclovir. On redirect by the State, Teresa testified that she never observed genital warts or a genital herpes outbreak on Gantt. She also testified that after K.G. reported the sexual assaults, Teresa asked Gantt whether he gave their daughter herpes and Gantt replied he did not give it to her because he did not have herpes.

Defense counsel also asked K.G. whether she had any sexually transmitted diseases, to which she answered no. K.G. stated that her dad never wore a condom when he sexually assaulted her. She was also asked what Gantt's penis looked like and she said "[i]t was dark and it had darker spots on it, like scars."

In closing argument, defense counsel argued that K.G. does not have any

---

[5] We refer to Teresa by her first name for clarity because she shares the same last name as the petitioner.

[6] Teresa confirmed these are generic and trade names for the same drug.

3

sexually transmitted infections, that Teresa has either herpes or genital warts, that Teresa takes valacyclovir to address the herpes or genital warts, and that Gantt was prescribed that same medication. Notably, pre-trial, defense counsel obtained a trial continuance, in part, because defense was in contact with experts to explore the viability of a potential defense based on defense interviews. Ultimately, Gantt did not call an expert witness.

During closing, defense counsel argued that the State wants the jury to believe K.G. was having daily unprotected sex with Gantt and "somehow needs you to believe that in those circumstances, [K.G.] somehow managed to avoid transmission of any of these diseases—but you don't need to believe that because that is unbelievable because the sexual contact didn't happen." In rebuttal, the State reminded the jury that there was "no evidence that the defendant conclusively has herpes."

Gantt did not testify at trial. The jury convicted Gantt as charged. This court affirmed his convictions in Gantt's direct appeal. He now challenges his convictions through this PRP.

## DISCUSSION

Gantt argues that his state constitutional right to an unbiased jury was violated when Juror 22 was impaneled, and that his counsel was ineffective for not getting an expert to testify as to the transmission of herpes.

PRP relief is extraordinary and is not a substitute for an appeal. In re Pers. Restraint of Coats, 173 Wn.2d 123, 132, 267 P.3d 324 (2011); In re Pers. Restraint of Hagler, 97 Wn.2d 818, 824, 650 P.2d 1103 (1982). Under RAP 16.4, the court will "grant appropriate relief to a petitioner if the petitioner is under a 'restraint' as defined in

4

[RAP 16.4(b)] and the petitioner's restraint is unlawful for one or more of the reasons defined in [RAP 16.4(c)]." Collateral relief is limited because it "undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders." Hagler, 97 Wn.2d at 824.

When collaterally attacking a conviction, we only consider the merits if the petitioner meets their "threshold burden" of showing either a constitutional or nonconstitutional error. In re Pers. Restraint of Davis, 152 Wn.2d 647, 671, 101 P.3d 1 (2004); In re Pers. Restraint of Cook, 114 Wn.2d 802, 814, 792 P.2d 506 (1990). If the error is constitutional, the petitioner must "demonstrate by a preponderance of the evidence that petitioner was actually and substantially prejudiced by the error." Davis, 152 Wn.2d at 671-72. In most cases, this means the petitioner cannot show merely the possibility of prejudice but that the outcome would have been different had the error not occurred. Hagler, 97 Wn.2d at 825. We deny the petition if it does not meet this burden. In re Pers. Restraint of Rice, 118 Wn.2d 876, 885, 828 P.2d 1086 (1992).

On the other hand, a nonconstitutional error requires a higher standard above the mere showing of actual and substantial prejudice. Davis, 152 Wn.2d at 672. "We will consider nonconstitutional error only when 'the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" Davis, 152 Wn.2d at 672 (quoting Cook, 114 Wn.2d at 812).

<u>Juror 22</u>

It is undisputed that the trial court mistakenly impaneled Juror 22 despite the fact the court had previously excused that juror based on Gantt's granted peremptory challenge. Juror 22 appears to have dutifully followed the trial court's oral

5

announcement that Juror 22 shall report for trial in seat number five. Because everyone in the courtroom was required to wear a mask, it is understandable that no one appeared to have recognized Juror 22 at trial. Nonetheless, the court clearly announced that "Juror 22" was impaneled at the end of voir dire and Gantt failed to object without any explanation. Gantt now argues that his state constitutional right to an impartial jury was violated when Juror 22 was impaneled.

Criminal defendants have a state constitutional right to a fair and impartial jury. WASH. CONST. art I, § 22. Accordingly, if a biased juror is seated, this right is violated because "[t]he presence of a biased juror cannot be harmless," and seating a biased juror "'requires a new trial without a showing of actual prejudice.'" State v. Guevara Diaz, 11 Wn. App. 2d 843, 851, 456 P.3d 869 (2020) (citing United States v. Gonzalez, 214 F.3d 1109, 1111 (9th Cir. 2000)). "[I]f the record demonstrates the actual bias of a juror, seating the biased juror was by definition a manifest error." State v. Irby, 187 Wn. App. 183, 193, 347 P.3d 1103 (2015). "A defendant's 'failure to challenge … jurors for cause at trial does not preclude him from raising the issue of actual bias on appeal.'" Guevara Diaz, 11 Wn. App. 2d at 852 (alteration in original) (citing Irby, 187 Wn. App. at 193).

"Actual bias" is defined as "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). "[I]mplied bias" is "conclusively presumed from the facts shown," but removal of a potential juror for actual bias requires affirmative proof. State v. Noltie, 116 Wn.2d 831, 838, 809 P.2d 190

(1991). This court "afford[s] great deference to the trial court's assessments concerning bias." State v. Smith, 3 Wn.3d 718, 724, 555 P.3d 850 (2024).

We recognize that actual bias can be established when there is an unequivocal statement indicating bias without a subsequent assurance of impartiality because "no nuance of inflection or demeanor can overwhelm the explicit meaning of [an equivocal statement of partiality]." State v. Booth, 24 Wn. App. 2d 586, 600, 521 P.2d 196 (2022); see, e.g., State v. Gonzales, 111 Wn. App. 276, 279, 45 P.3d 205 (2002), overruled on other grounds by State v. Talbott, 200 Wn.2d 731, 521 P.3d 948 (2022) (holding trial court should have excused juror after she said she would believe police over defendant because no effort to rehabilitate); Irby, 187 Wn App. at 190 (concluding that juror was biased after stating "I would like to say [defendant's] guilty" with no reassurance).

Determining actual bias is fact-specific and requires trial judges to carefully assess jurors' statements and questionnaires to determine whether a juror is biased and fit to serve. Smith, 3 Wn.3d at 727. Therefore, appellate review is restrained because the trial judge assesses "juror's responses, demeanor, and tone in context." Id. "We will not disturb the trial court's decision absent a clear abuse of discretion, i.e., where no reasonable judge would have made the same decision." Id. Here, Gantt never challenged Juror 22 for cause so there was no need for the State to rehabilitate. Ganntt, nevertheless, now quotes a few of Juror 22's statements to argue that Juror 22 was biased. Though the trial court was never asked to rule on a for cause challenges against Juror 22, we nonetheless can consider the fact the trial judge did not, sua sponte, dismiss Juror 22 for cause. That is because a trial judge "must, either sua sponte or upon a motion, dismiss the prospective juror for cause" "[w]hen a trial court is

7

confronted with a biased juror." Guevara Diaz, 11 Wn. App. 2d at 855.

We also look at more than selective quotes from Juror 22 and consider the entire context of all of Juror 22's responses. Juror 22 said he would not expect a sexual assault victim who was a child or a teenager to behave in a certain way because they are uninformed about their options. He added that when someone waits to allege sexual assault until they are older, there is a little bit more understanding of "the gravity of these accusations and doesn't take it lightly when they finally come forward."

Defense counsel asked Juror 22 to elaborate on what he was thinking when he answered in his jury questionnaire whether he was more or less likely to trust a law enforcement officer. Juror 22 stated that he has "lost [his] faith in the police force" emphasizing allegations in the news and referencing Harvey Weinstein[7] cases and how statistics show that the percentage of people who make false allegations is low. When defense counsel said he thinks it would be very uncomfortable and difficult for some people to believe that a child was lying about allegations of sexual abuse, he then asked Juror 22, "do you think that would be hard for you? Is that something you think you would be able to do?" Juror 22 admitted that "it would be difficult … to believe the child was lying." Defense counsel then assessed through a show of hands that a lot of jurors also shared Juror 22's common view. Then, defense counsel asked Juror 22 how the idea that a child would not lie coincides with the idea that Gantt is to be presumed innocent and that defense does not have to prove everything. Counsel specifically asked Juror 22 whether these ideas would allow him to critically evaluate a child's

---

[7] "Following the reporting of sexual assault allegations against Harvey Weinstein in October 2017, the #MeToo movement catapulted into the public's consciousness. Elliott v. Donegan, 469 F. Supp. 3d 40, 50-51 (E.D. N.Y. 2020)." Carter v. Jones, __ Wn. App. __, 581 P.3d 1050 (2025).

testimony. Juror 22 responded,

> You're right, that would be difficult to resolve in my mind. I am not sure if I would be able to 100% get past like what I know are like the statistics in the United States as this sort of allegation and how likely it really could be that someone is bringing a false allegation.
> I agree that I might have trouble with ignoring that to begin with, but at the same time it almost seems like a fair trial would include informed jurors.

Additionally, Juror 22 explained that "with other crimes, definitely it would be a lot easier to presume innocence like until proven guilty." Regardless, he stated he "would definitely try to keep an open mind as best as possible regarding different testimony heard throughout the trial."

Juror 22 also raised his hand when defense counsel asked the potential jurors whether it would be "hard to impossible to disbelieve a child making allegations like this." Defense counsel did not follow up with Juror 22 when he raised his hand but did follow up with other potential jurors. Defense counsel also asked whether anyone thought they could not be fair, and Juror 22 did not raise his hand.

In Noltie, the court held that a juror did not have actual bias when they were doubtful of whether they could be fair and impartial and it was a possibility that they would lean in favor of the State. 116 Wn.2d at 836-39. Juror 22's statements were at least as equivocal as the statements at issue in Noltie. "[E]quivocations suggesting a mere possibility of bias are not, on their own, sufficient to demonstrate a probability of actual bias." Smith, 3 Wn.3d at 732.

Although Juror 22 admitted it would be difficult to believe that a child was lying, that he lost faith in the police force, and was "not sure" whether he could get past the statistics regarding sexual assault allegations, he did not raise his hand when asked

9

whether he did not believe he could not be fair. Considering Juror 22's statements in context, we conclude that, at best, Gantt's equivocations suggested the mere possibility of bias and are not sufficient to demonstrate a probability of actual bias.

Gantt, relying only on foreign cases, argues that seating a peremptorily excused juror is a constitutional error that requires automatic reversal, asking this court to follow an Arizona Supreme Court case, Arizona v. Thompson, 68 Ariz. 386, 206 P.2d 1037 (1949), and a Georgia appellate court case, Sherman v. State, 2 Ga. App. 148, 58 S.E. 393 (1907). In both cases, the courts reversed and remanded for a new trial when a juror who had been peremptorily excused mistakenly sat on the jury. Arizona has since eliminated peremptory challenges. State v. Bell, 5 Wn.3d 54, 81, 571 P.3d 272 (2025) (Yu, J., concurring). In Sherman, the court observed that defense counsel did not recognize the excused juror in the jury box because counsel was near-sighted and did not have his glasses. Sherman, 2 Ga. App. at 394. We do not find these cases persuasive. Both were direct appeals and do not fall under Washington's strict PRP parameters addressing collateral review.

As explained, when challenging a conviction on collateral review, a petitioner must argue a constitutional or nonconstitutional error. Washington Courts have repeatedly held that there is no constitutional right to a peremptory challenge. State v. Booth, 24 Wn. App. 2d at 608; In re Pers. Restraint of Meredith, 191 Wn.2d 300, 309, 422 P.3d 458 (2018). As there is no constitutional right to a peremptory challenge, Gantt must prove that the seating of Juror 22 was a fundamental defect that resulted in a complete miscarriage of justice. Failing to demonstrate that Juror 22's responses unequivocally establish actual bias, Gantt likewise fails to show a complete miscarriage

of justice.[8]

<u>Ineffective Assistance of Counsel</u>

In support of his PRP, Gantt submitted an affidavit claiming he has herpes and genital warts. He also states that he offered all his medical information to his attorney and his attorney spoke to a doctor who opined that genital herpes is transmitted only during an active outbreak. Defense counsel's declaration addresses the Juror 22 issue and is silent as to this claim and the facts asserted in Gantt's affidavit as to this claim. Gantt argues that his attorney was ineffective for not presenting expert testimony on how genital herpes is transmitted.

Under the sixth amendment to the United States Constitution and article I, section 22 of the Washington State Constitution, a defendant is guaranteed the right to effective assistance of counsel in criminal proceedings. <u>Davis</u>, 152 Wn.2d at 672.

To establish ineffective assistance of counsel (IAC), a defendant must establish that his attorney's performance was deficient and that the deficiency prejudiced the defendant. <u>State v. Kyllo</u>, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) (citing <u>Strickland v. Washington</u>, 466 U.S. 688, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Performance is deficient when it falls "below an objective standard of reasonableness based on consideration of all the circumstances." <u>Kyllo</u>, 166 Wn.2d at 862 (quoting <u>State v. McFarland</u>, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)). To show prejudice, the defendant must prove that there is a reasonable probability that, but for the counsel's deficient performance, the outcome of the proceedings would have been different. <u>Kyllo</u>, 166 Wn.2d at 862 (citing <u>State v. Leavitt</u>, 111 Wn.2d 66, 72, 758 P.2d

---

[8] Gantt does not raise any ineffective assistance of counsel claim relating to Juror 22.

982 (1988)).

There is a strong presumption that counsel's performance was reasonable. Kyllo, 166 Wn.2d at 862 (citing State v. Studd, 137 Wn.2d 533, 551, 973 P.2d 1049 (1999)). The defendant must show that there was no legitimate strategic or tactical reason for the counsel's action. State v. Salas, 1 Wn. App. 2d 931, 949-50, 408 P.3d 383 (2018 (citing McFarland, 127 Wn.2d at 335). "Failure to show either prong 'defeats' the claim." State v. Bertrand, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024). We review a claim of ineffective assistance of counsel de novo. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

Gantt argues that calling a medical expert would have prevented the jury from having to guess the importance of the testimony that Gantt suffered from genital herpes and allegedly had unprotected sex with K.G. repeatedly for years without her contracting the disease. Gantt appears to presume that an expert would testify in his favor regarding the likeliness Teresa would have transmitted the disease to him, and the likeliness he would transmit the disease to K.G. if he was having repeated unprotected sex with her. However, Gantt provides no information as to what an expert would testify to.

The decision "to call a witness is a matter of legitimate trial tactics that presumptively does not support a claim of ineffective assistance of counsel." State v. Davis, 174 Wn. App. 623, 639, 300 P.3d 465 (2013). To overcome this presumption, a defendant must show that counsel failed to adequately investigate or prepare for trial. State v. Byrd, 30 Wn. App. 794, 799, 638 P.2d 601 (1981). Gantt makes no such showing.

The record reflects that before trial defense counsel stated he was in contact with experts to determine the viability of a potential defense. Later, defense counsel confirmed with the court that he did not intend to call the expert that he had been previously discussing. Though Gantt obtained a declaration from defense counsel stating that not responding to the trial court impaneling Juror 22 was not a tactical decision, he did not obtain the same as to the decision to not call an expert witness. See In re Pers. Restraint of Pheth, 20 Wn. App. 2d 326, 329, 502 P.3d 920 (2021) (holding that petitioner could not prove counsel's performance was deficient or prejudicial with only a self-serving affidavit and not obtaining counsel's version of events).

Even without expert testimony, defense counsel was able to admit evidence to support Gantt's argument that the jury should doubt that sexual contact occurred between him and K.G. For example, defense counsel argued that K.G. did not have any sexually transmitted diseases despite alleging she had repeated unprotected sex with Gantt for years, and that Gantt was prescribed the same medication that Teresa took to address genital warts. Without establishing otherwise, Gantt has not ruled out the possibility that defense counsel declined to call a medical expert because the testimony may not have been beneficial to Gantt.[9]

We conclude that Gantt has not met his burden to establish that his counsel's decision to not obtain a medical expert was not a legitimate tactical or strategic decision. Because Gantt fails to establish that defense counsel's performance was deficient, his IAC claim fails.

---

[9] The State cites to medical journals discussing the ability of the drug valacyclovir to reduce the transmission of genital herpes.

13

## CONCLUSION

We deny the PRP.

Cohen, J.

WE CONCUR:

Feldman, J.

Mann, J.